89 N.J. Super. 159 (1965)
214 A.2d 423
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SAM LaDUCA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1965.
Decided October 11, 1965.
*161 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Jerome A. Vogel argued the cause for appellant (Messrs. Jeffer, Walter & Tierney, attorneys).
Mr. Archibald Kreiger, Assistant Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Passaic County Prosecutor, attorney).
*162 The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant appeals a conviction in the Passaic County Court after a jury trial on a charge of maintaining a gambling resort in violation of N.J.S. 2A:112-3.
The primary ground of appeal is the denial of defendant's pretrial motion to suppress certain evidence as having been obtained by the police as the result of an illegal search and seizure. A full factual exposition of the attendant circumstances was not had on the motion because the trial judge who heard it denied it, before the proofs were complete, on the ground that the defendant was without standing to raise the question. However, additional evidence filling out the factual picture on the search question was adduced during the trial (which was held before a different judge). Most of the relevant facts have been stated in defendant's brief, and the State's brief agrees that this court should now decide the issue on that set of facts, which is conceded to be accurately set forth therein. We proceed to do so, but supplementing the recital of facts with so much of that testimony of the State's witnesses as is undisputed.
The essential facts are these. Defendant LaDuca was the proprietor of a barber shop in Passaic. On July 2, 1962 a search warrant was issued to search the shop and its occupants on an affidavit by a State Police officer couched in purely conclusionary terms that certain bookmaking paraphernalia were believed to be "located" therein. The insufficiency of the affidavit, and the consequent invalidity of the warrant, State v. Macri, 39 N.J. 250 (1963), are not challenged by the State. The warrant was delivered by the county prosecutor to county detectives Reiser and Saginario for execution. Armed therewith, they proceeded to the barber shop premises, Saginario entering the front door and Reiser the rear. They locked both doors to prevent anyone from leaving or entering the premises, and then, after showing the warrant to an employee barber then in charge, thoroughly searched the premises. Defendant was not in the shop at the time, but *163 two patrons in addition to the employee were. These men were required to empty their pockets, but nothing incriminating was found by the detectives.
While the detectives were thus fruitlessly engaged, one Torrieri came to the shop and tried to gain entrance. Finding the door locked, he was about to turn away when Reiser opened the door and called him in. Reiser showed Torrieri the search warrant and asked him to empty his pockets. Torrieri complied and produced a betting slip together with seven dollar bills wrapped therein. Saginario then obtained Torrieri's signature on a written consent to search his car parked nearby. That search revealed a racing program and a duplicate of the slip which was produced from his pocket in the shop. During the trial Torrieri, called as a witness by the State, testified he had come to the shop on the occasion in question to "place a bet with Sam" and that he had done so on a number of prior occasions.
The pretrial motion to suppress all the items of evidence mentioned above having been denied, they were all admitted in evidence against defendant during the trial.
We first deal with the ground of denial of the pretrial motion  lack of standing of defendant, owner of the premises where the illegal search was conducted, to complain of the seizure of property from another person. This was patently groundless. The search was aimed at defendant, and it was his privacy which was invaded. The warrant designated his shop. He therefore had standing to complain of the evidential use against him of anything obtained by the police as a result or in the course of that search. Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); and cf. State v. Bibbo, 83 N.J. Super. 36 (App. Div. 1964). A defendant is entitled to suppression of evidence seized in an unlawful search if he has either a "proprietary, possessory or participatory interest in the purloined or bludgeoned evidence, or, alternatively, in the place where it was found" (emphasis added). Maguire, Evidence of Guilt, p. 216 (1959); Jeffers v. United States, 88 U.S. App. D.C. 58, *164 187 F.2d 498, 500 (1950), affirmed United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); State v. Wade, 89 N.J. Super. 139 (App. Div. 1965).
The State also contends that since "the search and seizure of the betting slips took place on the premises of the barber shop which is a public place by statute and the common law because members of the public had the right to enter, including the police," therefore it follows that a seizure from Torrieri without a warrant is "not a search within the protection of the Fourth Amendment which is limited to and protects invasion against the police from unreasonable searches and seizures in private homes and places." The argument is completely without foundation.
It has never been held that a place of business of a private person or concern open to the public for purposes of doing business is beyond the protection of the Fourth Amendment, although the nature of a place of business as open to the public clearly is a factor in adjudging the reasonableness of an entry thereon by police officers. Private places of business, although open to such members of the public as had business with the owners, have repeatedly been held, or have been assumed without argument to the contrary, to be within the protection of the Fourth Amendment. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932). In United States v. DiCorvo, 37 F.2d 124, 132-133 (D.C. Conn. 1927), it was well stated: "The Fourth Amendment throws a mantle of protection around `houses' generally  not merely dwelling houses. A person's office or place of business is quite as immune from search without a warrant as his kitchen or bedroom."
In Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946), a majority of the court sustained the seizure without a warrant by federal officers of wartime gasoline *165 ration coupons unlawfully possessed by defendant but only after it had been shown that purchase by the officers of gasoline from the proprietor without coupons at "black market" prices gave them reasonable cause to believe that defendant was committing the crime of possession of ration coupons unlawfully acquired. The court reasoned that the coupons were by statute "public property in the custody of a citizen" rather than "private papers or documents" and that the officers had greater leeway in the choice of methods to reclaim that which was unlawfully possessed. It was emphasized that no general exploratory search was made and that defendant turned over to the agents the coupons and nothing else (id., at pp. 586, 592, 66 S.Ct., at p. 1256).
The court enigmatically said, in sustaining the search resulting in the surrender by defendant of the coupons (id., at p. 593, 66 S.Ct., at p. 1261): "The right of privacy of course remains. But, as we have said, the filling station was a place of business, not a private residence." Mr. Justice Frankfurter vigorously dissented, particularly at the "casual" intimation that the Fourth Amendment accords less protection to business offices than private residences (id., at p. 596, 66 S.Ct. 1256).
We can agree with the State that a private business whose doors are open to the general public is also to be considered open to entry by the police for any proper purpose not violative of the owner's constitutional rights  e.g., patronizing the place or surveying it to promote law and order or to suppress a breach of the peace. One can go as far as Smith v. United States, 70 U.S. App. D.C. 255, 105 F.2d 778 (1939), and hold that if police suspect a barber shop to be a betting parlor they may enter the place through an open or unlocked door, just as any member of the public is privileged to do, and then, if without a previous search ordinarily requiring a warrant they observe the commission of a crime in the premises they may arrest the offender and as incidental thereto search as much of the place as is under the control of the arrestee to find and seize things used to carry on the *166 unlawful enterprise. On its facts the Smith case holds no more than that. Nor do Fisher v. United States, 92 U.S. App. D.C. 247, 205 F.2d 702 (1953), and the other cases cited by the State. Cf. State v. Bibbo, supra, where, too, there was an arrest and search incidental thereto based on an observation by a police officer present in a store of the crime of possession of a lottery slip in his presence.
The facts of the present case are clearly distinguishable from those of any of the cases mentioned above. Here the police did much more than observe the commission of a crime from a privileged vantage point. It is doubtful whether there was any observation of the commission of any crime at all. Certainly there was none before Torrieri was searched. Torrieri was questioned, but not arrested; as a mere prospective bettor, he was not guilty of any crime, see State v. Lennon, 3 N.J. 337 (1949); N.J.S. 2A:40-1. Without a valid warrant, without any arrest of anyone, and without the prior observation of the commission of any crime therein, the police took the entirely illegal action of, in effect, seizing possession of the defendant's barber shop by locking not only the front door, through which the public ordinarily had access, but also the presumably private rear door, and then not only searching the physical premises but also under the authority of the illegal warrant compelling the occupants, including defendant's employee, to empty their pockets. Moreover, Torrieri's acquiescence in their demands to search his person and car was also clearly the product of the exercise of authority by the officers as manifested by the exhibition of the search warrant to him.
Realistically, the search of the premises and the other occupants was integral with the search of Torrieri and his car. All were part and parcel of a single transaction  the police raid of the shop. The illegality of the search of the premises infects the incidental search of Torrieri. It would be quibbling to attempt a distinction between the facts as they occurred and the situation which would have obtained if Torrieri had arrived a few minutes before and had been waiting for defendant with the other people in the shop when the *167 detectives arrived, in which case the illegality of the search would be so obvious as not even to be debatable.
The State argues that we should examine the validity of the search of Torrieri as though the antecedent search of the shop and its original occupants never took place  as though, for example, the police were waiting on the sidewalk for a betting customer of defendant to appear and they thereafter searched Torrieri outside the shop when he came upon the scene. In such case, they argue, any illegality in the search of Torrieri would be completely beyond an attack by LaDuca. The trouble with this proposition is that it varies too materially from what in fact did occur. The admission of Torrieri into the shop and his confrontation with the same illegal warrant with which the police had just gained submission to the seizure and search of the premises by the other occupants thereof prevent isolation of the Torrieri aspect of the search from the episode as a whole. The events are not "isolable" when a court is confronted with the practical question as to whether a violation of the Fourth Amendment took place and asked to apply the prophylactic sanction of the exclusionary rule to the evidence thus obtained. Cf. United States v. Jeffers, supra (342 U.S., at p. 52, 72 S.Ct., at p. 93).
The State does not seriously argue that the taking of the slips, etc., from Torrieri's person was validated by his consent. Its only emphasis in its brief is that he "did not object." A failure to object is not necessarily a consent. But to the extent that any consent issue is in the case, since we are deciding the validity of this search and seizure on this appeal without further delay, by agreement of the parties, as an exercise of original jurisdiction, we hold on the facts and the law that the confrontation of Torrieri with an apparently valid search warrant by police officers actively conducting a search of the premises rendered the situation one of coercive acquiescence by Torrieri in their authority rather than voluntary consent. Not to have complied with the request would have risked contempt of court. N.J.S. 2A:10-1(c). Cf. State v. King, 44 *168 N.J. 346, 352-354 (1965); Judd v. United States, 89 U.S. App. D.C. 64, 190 F.2d 649 (1951).
Even could Torrieri's surrender of the damaging papers and money to the police be regarded as voluntary on his part, or the taking thereof from him be properly regarded as a transaction separate from the unlawful search of the shop and the other occupants thereof (and we said we do not think so), we would nevertheless take the view that the evidence was still suppressible as the fruits of the illegal entry and search under a rule older than but recently dramatically reapplied in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and now generally referred to as the Wong Sun rule. The court there reminds us that at least as far back as Silverthorne Lumber Co. v. United States, supra, it had been recognized that, "The exclusionary prohibition extends as well to the indirect as the direct products of such invasions [violative of the Fourth Amendment]" (371 U.S., at pp. 484-485, 83 S.Ct., at p. 416). It was consequently there held that because an illegal entry into a laundry and an illegal arrest therein by federal agents of its proprietor, one Toy, resulted in Toy's revelation that narcotics might be found at the different premises of one Yee, whereupon the federal agents at once repaired to Yee's and obtained from him narcotics which he said he had gotten from Toy and another, both Toy's oral admissions and the narcotics were inadmissible in evidence against Toy in a prosecution for illegal possession, etc. The reasoning of the court was that they were the "fruit of the poisonous tree" of the original illegal entry into Toy's premises and of his arrest. It is noteworthy in Wong Sun that Yee apparently turned over the narcotics to the agents at once upon mere relation to him of Toy's admission (371 U.S., at p. 475, 83 S.Ct., at p. 407). Compare Torrieri's compliance here.
We regard the present case as an a fortiori situation for application of the Wong Sun rule. The knowledge of the betting paraphernalia in Torrieri's possession was not gained from a source "independent" of the "Government's own *169 wrong" but as a direct outcropping thereof (371 U.S., at p. 485, 83 S.Ct. 407). Had the detectives not been in the shop searching the place and its occupants at the particular time while brandishing an illegal warrant they presumably would not have caught Torrieri in their web nor been able to extract his papers by reason of the authority of that same warrant and of their status as police officers engaged in the ostensible performance of their duties.
For the reasons stated we find defendant suffered prejudicial harm in the denial of his motion for suppression and the consequent admission in evidence against him of the incriminating papers and currency taken from Torrieri.
Defendant has asserted other grounds of error which we do not believe would, alone, have warranted reversal of the conviction. Since the case is to be retried, however, we suggest that in confronting defendant on cross-examination with the record of his prior convictions as bearing on credibility there be no reference by the prosecutor to any "file in the bureau of the Department of Justice," see State v. Cooper, 10 N.J. 532, 556 (1952), nor any questioning concerning the defendant's conduct underlying any such conviction not contained in the judgment record thereof.
Reversed and remanded for a new trial.