**UNITED STATES of America, Appellee,**

**v.**

**Louis BERRETT, Defendant-Appellant.**

**No. 74–1436.**

United States Court of Appeals, First Circuit.

Argued March 5, 1975.

Decided March 28, 1975.

Owen Gallagher, Roslindale, Mass., for defendant-appellant.

Lawrence P. Cohen, Asst. U. S. Atty., Deputy Chief, Crim. Div., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

PER CURIAM.

Defendant appeals from his conviction for receiving goods stolen from interstate shipment in violation of 18 U.S.C. § 659 (1970), alleging that the court erred in refusing to suppress the goods as unlawfully seized.

In October 1973 the FBI was investigating the theft of 25 cartons of Texas Instrument hand calculators from the Roadway Express Terminal in North Reading, Mass. A special agent acting under cover contacted one DeVasteo, a Roadway driver, who admitted stealing the calculators and offered to sell them to the agent. The two drove to the defendant's garage and were told that he had left for the day. The closet in which the calculators were kept was locked and the two made arrangements to return the following day to inspect the goods. The next morning the agent, DeVasteo and defendant entered the garage and the latter brought out three cartons of calculators. The agent opened one of the cartons and removed the contents.

Five or six other agents involved in the investigation had been detailed to proceed to the garage that day and look for a Roadway truck in the vicinity. When the truck was spotted the agents entered the open garage to locate and interrogate the driver, and observed the undercover agent, DeVasteo and the defendant standing around several cartons bearing Texas Instrument markings. One agent identified himself and interviewed DeVasteo, who admitted having stolen the calculators and concealing them in defendant's garage. Another agent then obtained a search warrant and seized the calculators.

Defendant did not learn of the FBI's undercover activities until after the hearing on the motion to suppress, which was denied. When the activities were revealed the court decided to reconsider its ruling. Counsel filed a stipulation of facts and supplemental briefs, and the court without a hearing again denied the motion.

■ On appeal defendant argues, apparently for the first time, that the calculators were actually seized when the FBI agents "moved in" and "secured the premises" without a warrant, and that the subsequent procurement of a warrant could not serve to legitimate this warrantless seizure. However, he has not made out any showing that the agents exercised dominion over the garage or the calculators before the warrant was executed. United States v. Berkowitz, 429 F.2d 921 (1st Cir. 1970).* Although several agents moved to the back of the garage to secure it, Agent Ervin testified that this was merely to protect his safety while he interviewed DeVasteo. There was no evidence that the agents purported to seize the calculators or placed a guard on them, *id.*; they did not close or lock the garage doors, *cf.* State v. LaDuca, 89 N.J.Super. 159, 214 A.2d 423 (1965), or display guns or handcuffs at any time. We conclude that the court did not commit plain error in treating the seizure as occurring only upon execution of the warrant. Fed.R. Crim.P. 52(b).

■ Even if the seizure was pursuant to warrant, defendant contends, it

---

\* Defendant speculates that the agents would not have permitted him to dispose of the calculators, had he attempted to do so. Even if true this would not prove that the seizure had necessarily occurred at any time before the attempted disposition, since such a disposition

might itself appear to the agents an exigent circumstance justifying seizure. Whether such a seizure would be appropriate on the facts of this case is a matter we need not decide. *Cf.* Niro v. United States, 388 F.2d 535, 540 (1st Cir. 1968).

**156**

was tainted because the personal knowledge of the calculators' presence alleged in the supporting affidavit was obtained by an unlawful search. Defendant concedes that as an ordinary matter law enforcement officials may accept a general public invitation to enter commercial premises for purposes not related to the trade conducted thereupon, United States v. Berkowitz, *supra*, 429 F.2d at 925; once they are there they are of course entitled to take note of objects in plain view. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . ." Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Citing Niro v. United States, 388 F.2d 535 (1st Cir. 1968), defendant seeks to distinguish *Berkowitz* on the ground that in this case because of its undercover activities the government already had probable cause to search and seize at the time of entry and in fact intended to do so, hence should have gone before a magistrate to secure a warrant. But *Niro* was a case of seizure without warrant; in the instant case a warrant was obtained. While the possession of probable cause may necessitate procuring a warrant to search if practicable, it obviously cannot preclude mere further investigation not otherwise violating the Fourth Amendment. Defendant has no more right to be investigated when he pleases than to be arrested when he pleases. *Cf.* United States v. Berkowitz, *supra*, 429 F.2d at 926. Although the agents may have had probable cause when they accepted defendant's public invitation to enter and may even have intended to arrest defendant and seize the goods shortly, they had a perfect right to confirm their suspicions and protect the government's case by further investigation before seeking a warrant.

On this view of the law defendant was not prejudiced by the limitation on the scope of evidence at the hearing or the discretionary refusal to hold a full hearing on reconsideration.

Affirmed.