UNITED STATES of America, Appellee,

v.

George W. BIBBEY, Defendant, Appellant.

No. 83–1237.

United States Court of Appeals, First Circuit.

Argued April 2, 1984.

Decided May 7, 1984.

Rehearing Denied June 15, 1984.

Ronald Ian Segal, Concord, N.H., for appellant.

Gary S. Katzmann, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN and ALDRICH, Circuit Judges, and BONSAL,* Senior District Judge.

BONSAL, Senior District Judge.

Appellant George W. Bibbey ("Bibbey") appeals from his conviction by a jury in the United States District Court for the District of Massachusetts of two counts of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and § 846, and 18 U.S.C. § 2. On March 29, 1983 Bibbey was sentenced to four years' imprisonment on each count to run concurrently, and a three-year special parole term. Execution of his sentence has been stayed pending appeal.

## THE FACTS

On November 10, 1982 Special Agent Richard Scovel of the Providence Regional Office of the Drug Enforcement Administration ("D.E.A.") informed Special Agent John Kelly that he had telephoned Bibbey on the previous evening and had arranged to meet Bibbey at the Howard Johnson's Restaurant in Canton, Massachusetts to discuss the purchase of cocaine. Scovel, who had identified himself in his conversation with Bibbey as "Rick," had made contact with Bibbey through Alan Balboni ("Balboni") who was an associate of Bibbey

* Of the Southern District of New York, sitting by designation.

and also a government informer. At Scovel's request, Special Agent Kelly agreed to meet Bibbey in place of Scovel at the Howard Johnson's.

On November 10, 1982 Kelly met Bibbey in the Howard Johnson's parking lot and introduced himself as "Rick". The two men proceeded to a table in the restaurant and began a conversation. During the course of the conversation Bibbey introduced Rick to "Ted" (Theodore Leutz, hereinafter referred to as "Ted"). Bibbey told Rick that he had high level connections in the Caribbean and in Korea, and that he could launder money for Rick. When Rick asked Bibbey about the "product" (cocaine), Bibbey said that it sold at $60,000 a kilo and that he could get Rick up to five kilos for $300,000. Bibbey indicated that the cocaine was 60 percent pure. At the conclusion of the conversation, Rick told Bibbey that he would call him on November 15.

Rick's next contact with Bibbey came on November 15, when Rick telephoned Bibbey to tell him that he was "back in town" and was interested in doing business. Bibbey told Rick to call him back on the next day, November 16. Rick did speak with Bibbey on two occasions on November 16, but nothing happened that day.

Rick called Bibbey on November 17, and the two men agreed that before purchasing any cocaine, Rick would test a portion taken from a gram sample which Bibbey would bring with him. They further decided that they would meet that evening at the Ritz-Carlton Hotel in Boston.

On the evening of November 17, Rick and Bibbey met at the Ritz-Carlton. During a dinner conversation Bibbey explained that Ted, who was not present, had brought him the sample of cocaine that Rick had requested. Bibbey apologized to Rick because Ted had only brought a "line". Rick asked Bibbey if he had the sample of cocaine with him. In response, Bibbey handed Rick a white substance which was subsequently determined to be cocaine. Rick stated that he would call

Bibbey at noon the following day, November 18.

On November 18, at approximately 12:10 p.m., Rick telephoned Bibbey and arranged to purchase two kilos of cocaine that evening at the Howard Johnson's in Canton. At about 6:00 p.m. that evening Rick and Special Agent Steven Boeri proceeded in separate cars to the Howard Johnson's parking lot. Rick parked his car near Bibbey's, and then entered Bibbey's car. Rick asked Bibbey if he was "set to go," and Bibbey answered "yes." Rick told Bibbey that he wanted to take a sample from the kilo, bring it over to his man (Agent Boeri), and test it. Rick said that if the sample was "good," he would return with the necessary money and purchase the cocaine.

Shortly thereafter, Ted, who was carrying a briefcase, entered Bibbey's car and sat in the rear seat behind Bibbey, who was in the driver's seat. Ted opened the briefcase. The briefcase contained a clear plastic bag which contained two smaller clear plastic bags of white powder. Rick opened the top bag of white powder, removed a sample, and placed it in a glassine bag. Rick then proceeded to Special Agent Boeri's car in order to test the sample. Boeri performed a field test on the sample which proved positive for the presence of cocaine. Boeri then gave a pre-arranged arrest signal and Bibbey and Ted were arrested by D.E.A. agents. Leo Cara Donna, who had been seated in Ted's car, was also arrested.

At the trial, Bibbey testified in his own behalf. He admitted his involvement in the transaction which took place on November 18, 1982, but testified that he had been set up by Alan Balboni. Bibbey testified that he had known Balboni for some time and had discussed various business matters and ventures with him. Bibbey testified that, for the purpose of dealing with Rick, Balboni had furnished him with a kilo of white powder which Balboni had described as a counterfeit substance which would simulate cocaine if tested. Bibbey further testified that Balboni had told him that Rick would telephone him to negotiate a pur-

chase, and that Bibbey could use a real sample of cocaine as bait to effect a sale of the counterfeit substance to Rick and thereby swindle Rick out of $60,000. Bibbey stated that he was to have received $20,000 from the transaction.

Bibbey also testified that Balboni had contacted him on at least twelve occasions over an eight-month period to arrange a drug transaction. Bibbey testified that all his contacts with Balboni were initiated by Balboni and that it was Balboni who always raised the subject of drugs. Bibbey testified that he rejected each overture.

## THE LAW

Only two of the several grounds raised by appellant in this appeal merit discussion. First, appellant contends that his conviction should be reversed because the government failed to disclose to him before trial the name of its informer, contrary to the teaching of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Second, appellant claims that he was entrapped by the informer into giving Rick what he believed to be a counterfeit substance.

■ Before trial, appellant filed a pre-trial motion requesting that the government be ordered "to disclose the identity and role of any informant it has utilized in this case." The government answered that there was "None under *Roviaro*." Thereafter, the magistrate denied appellant's motion for disclosure "since the government represents that there are no *Roviaro*-type informants in this case." In *Roviaro*, the Supreme Court held that the government's privilege to withhold the names of informers must give way if "the government's informer was the sole participant, other than the accused, in the transaction charged ... [and] was the only witness in a position to amplify or contradict the testimony of government witnesses." *Id.* at 64, 77 S.Ct. at 630. Balboni, concededly the informer here, was not the sole participant in the transactions charged in the indictment. Moreover, the informer, Balboni, was well known to the appellant and they

had been associated in business and in other ways for a period of years. Indeed, in his opening to the jury, appellant's counsel charged Balboni with having "set up" the appellant. Under these circumstances, the fact that Balboni's name was not given to appellant before trial did not injure appellant in any way. While the government did not call Balboni as its witness at the trial so that appellant would have an opportunity to cross examine him, he was made available to be interviewed by the appellant and, indeed, Balboni was present as a spectator at the trial. In view of the foregoing, we do not believe that appellant was injured by the failure of either side to call Balboni as a witness.

■ With regard to entrapment, appellant's counsel contended throughout the trial and in his summation to the jury that appellant had been entrapped by Balboni. His motion for acquittal at the close of the evidence was based entirely on the defense of entrapment. Appellant now contends that his conviction should be reversed on this ground. The question of entrapment was properly submitted to the jury for its consideration. *United States v. Wilbur*, 545 F.2d 764, 766 (1st Cir.1976). The elements were outlined in detail in the judge's charge and the judge repeated them again during the course of the jury's deliberations. The judge charged that entrapment means that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act. However, where a person is predisposed to commit an unlawful act, that is, ready and willing to violate the law, the fact that government officials or their agents afforded him the opportunity to do so does not constitute entrapment. As this court stated in *United States v. Fera*, 616 F.2d 590, 596 (1st Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980):

Entrapment occurs when the offense for which the defendant is charged was instigated by law-enforcement officers and the defendant had no previous disposition to commit the offense. Merely affording

the defendant the opportunity for commission of the offense does not constitute entrapment. *See United States v. Caron,* 588 F.2d 851 (1st Cir.1978); *United States v. Russo,* 540 F.2d 1152 (1st Cir.1976), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976); *Kadis v. United States,* 373 F.2d 370 (1st Cir. 1967).

Rick's testimony as to his conversations with Balboni provided ample evidence for the jury to consider appellant's predisposition to participate in a cocaine transaction from which it could conclude that there was no entrapment.

*Affirmed.*