UNITED STATES of America

v.

Otis Darren LEWIS and Michael Starks.

Cr. No. 92–10350–GN.

United States District Court,
D. Massachusetts.

March 5, 1993.

William A. Brown, Boston, MA, for Otis Darren Lewis.

James P. Duggan, Boston, MA, for Michael Starks.

Thomas C. Frongillo, U.S. Atty.'s Office, Major Crimes Div., Boston, MA, for U.S.

## MEMORANDUM AND ORDER

GORTON, District Judge.

### I. INTRODUCTION

On December 28, 1992, the defendant Michael Starks ("Starks") filed a Motion to Suppress in the above captioned action. On January 19, 1993, this Court granted Starks an opportunity to supplement and amend his motion to suppress, which he did by filing an amended motion to suppress on February 8, 1993. The co-defendant in this action, Otis Darren Lewis ("Lewis"), then filed a Motion to Suppress on February 9, 1993. Both defendants Starks and Lewis requested an evidentiary hearing with respect to their motions to suppress.

On February 8, 1993, defendant Starks also filed a motion to disclose the identity and whereabouts of the government's confidential informant.

### II. FACTS

On Friday, August 14, 1992, a confidential informant telephoned Police Officer Robert G. Leedberg of the Brockton Police Department "Gang Unit", and stated that Starks and Lewis would be in Pete & Mary's Bar on Montello Street and both would be in possession of firearms. The confidential informant had provided reliable information to Officer Leedberg and other Brockton police officers on numerous previous occasions. Because Officer Leedberg and Brockton Police Officers James Smith and Thomas Keating, with whom Officer Leedberg was working, were involved in another case on August 14, 1992, they did not respond to the tip.

The confidential informant again telephoned Officer Leedberg on August 15, 1992, and stated that Starks and Lewis were again in Pete & Mary's Bar, and that they were in possession of firearms. The confidential in-

formant stated that he had seen the firearms, and described what Starks and Lewis were wearing. After obtaining this information, Officers Leedberg, Keating and Smith established surveillance of Pete & Mary's bar.

During the evening of Saturday, August 15, 1992 and through the early morning hours of Sunday, August 16, 1992, the confidential informant was present at Pete & Mary's Bar, and came out of the bar and told Officer Leedberg that Lewis and Starks would be leaving the bar soon and that the informant would contact him when they left. At approximately 1:00 a.m. on August 16, 1992, Lewis and Starks left Pete & Mary's Bar, and Officers Leedberg, Keating and Smith observed them as they walked across Montello Street to the D'Angelo Sub Shop parking lot where a brown car was parked.

Officers Leedberg and Keating then drove their unmarked police car into the parking lot, and stopped behind the brown car. As the unmarked police car approached, Officer Smith, who was standing behind Lewis and Starks in an adjacent parking lot, observed the suspects bend down and straighten up. Officer Smith shouted "[p]olice, don't move, keep your hands in sight". The police officers then pat frisked Lewis and Starks and did not find any guns or narcotics. Officer Keating then looked around the parking lot area where Lewis and Starks had been standing and had bent over. He found a loaded 45 caliber Star pistol and 22 packets of a substance later determined to be "crack cocaine" on the ground under a car parked beside the driver's side of the brown car where Lewis had been standing. Officer Keating also found a loaded nine millimeter Beretta pistol and 17 packets of "crack cocaine" on the ground under the passenger's side of the brown car where Starks had been standing. The police officers then placed Lewis and Starks under arrest.

The grand jury returned an indictment against the defendants Lewis and Starks on November 24, 1992, charging them with pos-

session of cocaine with intent to distribute, being a felon in possession of a firearm and carrying a firearm in aid of a drug trafficking offense.

## III. MOTIONS TO SUPPRESS

In their motions to suppress, the defendants contend that the guns and "crack cocaine" were confiscated after a warrantless search, and that the police officers did not have probable cause to justify the search and seizure. Lewis and Starks argue that the police officers had ample opportunity to obtain a search warrant, and that, because the police officers failed to do so, the stop of the defendants and the ultimate seizure of the guns and cocaine necessarily violated the Fourth Amendment. They conclude that the police did not lawfully seize the guns and "crack cocaine", and that this evidence must now be suppressed as the fruit of an unlawful search and seizure.[1]

There was, however, no violation of the defendants' Fourth Amendment rights. The Court finds that the guns and drugs were abandoned property and that the evidence was lawfully seized pursuant to the plain view doctrine.

## A. DUTY TO OBTAIN A WARRANT

■ As a preliminary matter, the defendants Lewis and Starks contend that the Brockton police officers had ample opportunity to obtain a warrant prior to their surveillance of Pete & Mary's Bar on August 15 and 16, 1992, and that the police officers' failure to do so before the stop therefore necessarily ran afoul of the Fourth Amendment. Where a warrant has not been obtained, the government bears the burden of proving that its search and seizure falls within a recognized exception to the warrant requirement. *United States v. Cruz Jimenez*, 894 F.2d 1, 6 (1st Cir.1990). If the government satisfies that burden, the search and seizure is not unreasonable. *Id.*

---

1. On January 19, 1993, at a status conference in this action, defendant Starks' attorney requested leave to file an amended motion to suppress, so that he could adequately provide factual evidence in support of his motion to suppress. The Court granted the request, and Starks subsequently

submitted an amended motion to suppress and memorandum in support. The factual record, however, was not substantially supplemented, and it remains bereft of any specific, nonconjectural facts to support defendant Starks' claim that his Fourth Amendment rights were violated.

■ Furthermore, the existence of probable cause justifying the issuance of a warrant does not preclude further investigation without a warrant, so long as the continuing investigation does not violate the suspect's Fourth Amendment rights. *See generally United States v. Berrett,* 513 F.2d 154, 156 (1st Cir.1975). In the present case, it is unclear whether the police officers had sufficient probable cause to arrest the defendants prior to the chain of events that transpired in the early morning of August 16, 1992. The police officers were not, however, precluded from investigating the tip they received on August 15, 1992, as long as their actions did not violate the Fourth Amendment. The Court finds that the government has satisfied its burden of proving that its actions on August 16, 1992 were reasonable and that the government did not violate the defendant's Fourth Amendment rights, as discussed below.

## B. ABANDONED PROPERTY

■ The Fourth Amendment does not extend its protection to abandoned property, and where property has in fact been abandoned, no issue of a search or seizure is presented, and the property may be seized without probable cause. *See, e.g. Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960); *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). Property is deemed "abandoned" in the Fourth Amendment context when a defendant has, in discarding the property, relinquished his reasonable expectation of privacy in the property. *See United States v. Thomas,* 864 F.2d 843, 845–46 (D.C.Cir.1989).[2] Thus, where a defendant attempts to dispose of certain incriminating objects upon the lawful approach of or pursuit by the police, and intends to relinquish his reasonable expectation of privacy in those items, those items will be treated as "abandoned" and they may be seized by the police.

■ Under the facts of this case as described in Section II. above, the police officers had reason to believe that Lewis and Starks attempted to dispose of the guns and cocaine by setting them on the ground of the parking lot under the brown car and the adjacent car, so that they would not be in possession of incriminating evidence, when they first became fearful that they might be searched. Based upon their actions, Lewis and Starks reasonably manifested an intent to abandon the property.

■ Even if Lewis and Starks contended that they only discarded the incriminating objects in response to unlawful, harassing conduct by the Brockton police officers, and thus did not effectively "abandon" the property, that argument must fail for two reasons. First, there is no evidence that the Brockton police officers unlawfully pursued the defendants, or that Lewis and Starks abandoned the property in response to any unlawful, harassing conduct of the police officers. Rather, it appears that the defendants discarded the guns and cocaine in a public area after they observed an unmarked police car pull into the D'Angelo Sub Shop parking lot. Second, under the recent United States Supreme Court case of *California v. Hodari D.,* —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), even where a police officer clearly manifests an intent to seize a defendant, that manifested intent is not a basis for suppression of evidence which a defendant "abandons" in response to the police officer's actions.

## C. PLAIN VIEW DOCTRINE

The Court also finds that, for two reasons, the evidence should not be suppressed because it was properly seized under the plain view doctrine.

■ 1. In the present case, no "search" in the Fourth Amendment sense, occurred. Here, the police officers discovered the guns

**2.** Considering that the guns and drugs were "abandoned property", the Court seriously doubts whether Lewis and Starks have standing to bring this motion to suppress where the defendants cannot legitimately contend that they had a reasonable expectation of privacy in the parking lot and they have not claimed that they owned, possessed or controlled the objects that were seized. *See generally Rakas v. Illinois,* 439 U.S. 128, 140–50, 99 S.Ct. 421, 428–34, 58 L.Ed.2d 387 (1978), *reh. denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979); *United States v. Cruz Jimenez,* 894 F.2d 1, 5 (1st Cir.1990).

and drugs in a public parking lot, and never made a physical intrusion into a constitutionally protected area. *See* W. Lafave, 1 *Search and Seizure* § 2.2(a) at p. 322 (1987). An observation made by a law enforcement agent when he is present on premises open to the public under the same circumstances as any other member of the public does not constitute a search within the meaning of the Fourth Amendment. *Lewis v. United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966), *reh denied,* 386 U.S. 939, 87 S.Ct. 951, 17 L.Ed.2d 811 (1967); *United States v. Berrett,* 513 F.2d 154, 156 (1st Cir. 1975). Furthermore, the defendants cannot legitimately contend that they had a reasonable expectation of privacy in the ground of this public parking lot. *See United States v. Roccio,* 981 F.2d 587 (1st Cir.1992). The items seized were in plain view, on the ground of a parking lot, and they had been completely abandoned by Lewis and Starks before the police officers "stopped" the two suspects. Therefore, the police officers had lawful access to the evidence, and seizure of the contraband did not interfere with the defendants' Fourth Amendment rights.

■ 2. The Court also finds that the plain view doctrine justifies the seizure of the evidence in another respect. Where an item of an incriminating nature is seen by police officers because such items are in plain view, a seizure of the item, under certain circumstances, may be made without a warrant. An essential predicate for such a seizure is that the police officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112 (1990). The item also must be in plain view and its incriminating nature must be immediately apparent. *Id.* Additionally, the police officer must be lawfully located in a place in which the object can be plainly seen and have a lawful right of access to the object itself. *Id.*

■ In the instant case, the police officers, in fact, "stopped" Lewis and Starks after the two suspects allegedly abandoned the contraband, but prior to Police Officer Keating's actual discovery of the guns and

cocaine. The defendants might therefore claim that the contraband found in the parking lot was the result of the "stop", and that if the "stop" was unlawful, the subsequent seizure of the guns and cocaine was also unlawful. Assuming *arguendo* that the seizure of the contraband was the result of this "stop", the defendants still fail to demonstrate that their Fourth Amendment rights were violated. The Brockton police officers had the "reasonable articulable suspicion" necessary to justify the investigatory stop under the Fourth Amendment. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Where the government can identify specific and articulable facts, together with rational inferences drawn from those facts, which reasonably suggest criminal activity, police officers are justified in making a short investigatory stop. *Id.* Moreover, a reliable informant's tip can justify a stop and frisk. *Adams v. Williams,* 407 U.S. 143, 147–48, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972).

■ The tip in this case, from a reliable confidential informant inside Pete & Mary's Bar, indicated that Lewis and Starks had firearms, provided the police officers with a description of the defendants and predicted their future movements. Details of the tip were confirmed by police observations, and, together, the tip and the observations justified the investigatory stop of Lewis and Starks. The pat and frisk of the defendants did not reveal any guns or drugs, but the subsequent search of the areas of the parking lot where the defendants had been standing turned up the two guns and the 39 packets of cocaine. The incriminating nature of the pistols and packets was immediately apparent and Officer Keating had a lawful right of access to the abandoned guns and cocaine which were located on the ground in the parking lot.

## IV. MOTION TO DISCLOSE IDENTITY OF CONFIDENTIAL INFORMANT

The defendant Starks bases his motion to compel disclosure of the identity of the confidential informant on several grounds:

1. that the surveillance and stake out conducted by the Brockton police was based solely on tips from, and conversations with, the informant on August 14, 15, and 16, 1992, and that the informant was inside Pete & Mary's Bar with Starks and Lewis throughout the evening and just prior to the defendants' arrest;

2. that the informant was at the scene of the alleged offense and was the only person in a position to contradict the testimony of the government's witnesses; and

3. to deny disclosure of the confidential informant's identity would deprive Starks of his fundamental right to prepare an adequate defense, his Sixth Amendment right to confront witnesses against him and his right to a fair trial.

 Courts have long recognized the government's privilege to withhold from disclosure the identity of informants. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); *United States v. Martinez*, 922 F.2d 914, 920 (1st Cir.1991). This privilege, however, is not absolute. Rather, disclosure must be forthcoming if the "government informant was the sole participant, other than the accused, in the transaction charged", or was the only witness in a position to amplify or contradict the testimony of government witnesses. *Martinez*, 922 F.2d at 920–21; *United States v. Bibbey*, 735 F.2d 619, 621 (1st Cir.1984).

 When the government informant is not an actual participant or a witness to the offense, disclosure is required only in exceptional cases where the defendant can point to some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information, and the informant's private interest in his or her own safety. *Martinez*, 922 F.2d at 921; *United States v. Hemmer*, 729 F.2d 10, 15 (1st Cir.), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984); *United States v. Estrella*, 567 F.2d 1151, 1153 (1st Cir.1977). Mere speculation as to the usefulness of the informant's testimony is insufficient to justify disclosure of his or her identity. *Martinez*, 922 F.2d at 921. The defendants therefore have an obligation to provide at least some explanation of how the informant's testimony could have supported their alleged defenses. *Martinez*, 922 F.2d at 921; *United States v. Giry*, 818 F.2d 120, 130 (1st Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987).

 Where the informant is a mere tipster, a conduit rather than a principal or active participant in the enterprise, disclosure is not required, even in those instances where the informant was present during the commission of the offense. *Martinez*, 922 F.2d at 921; *Giry*, 818 F.2d at 130. The privilege need only give way when the disclosure of the informant's identity would be vital to a fair trial. *Martinez*, 922 F.2d at 921.

 Moreover, a defendant's interest in disclosure of an informant's identity at the suppression stage of a criminal proceeding is less than at trial. *United States v. Jackson*, 918 F.2d 236, 240 (1st Cir.1990). Where an informant's tip is employed not to weigh guilt, or even probable cause for a warrantless arrest, but simply to determine whether there is sufficient suspicion to warrant an investigatory stop, defendant's legitimate interest in the identity of the informant must be considered commensurately reduced. *Id.* at 241.

 In the present case, there is no showing that the confidential informant was a participant in or a witness to the alleged crime for which Starks was arrested. The evidence shows that the confidential informant was at all material times inside Pete & Mary's Bar. The alleged crimes for which Starks was arrested occurred after he left Pete & Mary's Bar, when he was apprehended in the D'Angelo's Sub Shop parking lot.

There is no evidence to suggest that the confidential informant was anything more than a "tipster". Thus, disclosure of the informant's identity is not mandated because there is no evidence of "exceptional circumstances" that would justify such disclosure. Starks speculates that the informant observed goings on inside Pete & Mary's Bar prior to the arrest that may somehow bear upon his arrest, and that the informant is

somehow the only individual who may contradict the testimony of government witnesses. Starks, however, provides no specifics, nor does he even contend that the informant was present at the arrest, where the alleged criminal activity, for which Starks was arrested, occurred. Because Starks bases his motion on mere speculation, unsupported by the facts in this case, and because he has failed to establish that the disclosure of the informant's identity is necessary for his defense, the defendant Starks' motion will be denied.

## V. MOTIONS FOR EVIDENTIARY HEARINGS

■ Both defendants have filed motions for evidentiary hearings in regard to their motions to suppress. Because the defendants have failed to allege specific, detailed and nonconjectural facts which suggest that their claims are substantial, the defendants' motions for evidentiary hearings will be denied. *United States v. Migely,* 596 F.2d 511, 513 (1st Cir.), *cert. denied,* 442 U.S. 943, 99 S.Ct. 2887, 61 L.Ed.2d 313 (1979).

## ORDER

For the reasons stated in the above Memorandum, it is hereby ORDERED:

1. Defendants' motions for evidentiary hearings in regard to their motions to suppress are DENIED.

2. Defendants' motions to suppress are DENIED.

3. Motion of the Defendant Starks to disclose the identity of confidential informant is DENIED.