USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2185

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 PHILLIP F. ROBINSON,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Mary M. Lisi, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Bownes, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 

 Michael J. Lepizzera, Jr., by appointment of the court, for
appellant.
 Margaret E. Curran, Assistant United States Attorney, with
whom Sheldon Whitehouse, United States Attorney, and Richard W.
Rose, Assistant United States Attorney, were on brief, for
appellee.

May 8, 1998

 SELYA, Circuit Judge. This appeal features a dispute
about the extent to which scientific evidence must be adduced at
sentencing before the court can impose the onerous penalties
attached to trafficking in crack cocaine. We pause first to set
the stage and address another, more mundane issue. We then proceed
to the sentencing question.
I. BACKGROUND
 On January 6, 1997, Providence police officers obtained
a warrant authorizing them to search residential premises located
at 151 Reynolds Avenue for cocaine, money, and other articles
related to the sale or use of narcotics. In securing the warrant,
the gendarmes relied on input from a confidential informant (CI-1),
thought by them to be reliable, who not only provided information
but also made a controlled purchase of cocaine from the subject
premises a few days before the warrant issued. According to CI-1,
the person primarily responsible for the drug-distribution activity
was "Louie," a dark-haired Hispanic male approximately five feet
eight inches tall and of medium build.
 Upon entering the premises, officers discovered cocaine
in a pair of pants that were lying on the bed in which defendant-
appellant Phillip F. Robinson was sleeping. Drugs also were found
on the kitchen table and in an unoccupied bedroom. The police
arrested the appellant and his mother, Carolyn Robinson, and a
federal grand jury later indicted both individuals for possessing
cocaine base, intending to distribute it, and conspiring to commit
that offense. See 21 U.S.C. 841(a)(1), 846 (1994).
 After the initial arrest, the police sought another
search warrant for 151 Reynolds Avenue. They based the application
for this warrant on information from a second confidential
informant (CI-2), who vouchsafed that drug trafficking had
continued at the premises notwithstanding the appellant's
detention. The warrant issued, but the neoteric search proved a
waste of time.
 During pretrial proceedings, the appellant moved for
disclosure of the identities of both confidential informants. The
district court denied the motion. In the ensuing trial, the jury
convicted the appellant on both charges.
 At the disposition hearing, the key issue centered around
whether the appellant's offenses involved crack cocaine as opposed
to powdered cocaine. The district court, relying principally upon
two pieces of evidence a pharmacologist's laboratory report
attesting that the seized drugs had the chemical composition of
cocaine base and the testimony of Detective Daniel Gannon, an
experienced narcotics investigator, that the contraband was indeed
crack resolved this dispute in the government's favor and
sentenced Robinson accordingly. This appeal followed. In it, the
appellant challenges both the trial court's denial of his motion
for disclosure and its sentencing determinations.
II. THE DISCLOSURE MOTION
 We review a district court's decision not to force the
prosecution to divulge the identity of a confidential informant for
abuse of discretion. See United States v. Lewis, 40 F.3d 1325,
1335 (1st Cir. 1994). In this context, the abuse of discretion
standard is quite deferential: the district court's resolution of
a disclosure request should be upheld as long as it comports with
some reasonable rendition of the record. See United States v.
Bender, 5 F.3d 267, 269 (7th Cir. 1993).
 The Supreme Court first recognized a tattler's privilege
 that is, a privilege to withhold the identity of an informant 
in Roviaro v. United States, 353 U.S. 53 (1957). The privilege is
designed to protect the government's sources and to shield citizens
who contribute their knowledge to facilitate the prosecution of
criminal acts. Still, the tattler's privilege is not absolute. In
determining whether justification for an exception exists, the nisi
prius court must balance the interests undergirding the privilege
against the accused's fundamental right to a fair trial, and, in
doing so, must take into account the full panoply of relevant
circumstances (including the nature of the crime charged, the
contours of the defenses asserted, the available means of proving
the charges and defenses, and the significance of the informant's
role). See id. at 62; United States v. Martinez, 922 F.2d 914,
920-21 (1st Cir. 1991); United States v. Giry, 818 F.2d 120, 130
(1st Cir. 1987).
 To further the policies behind the Roviaro rationale, the
trial court's analysis begins with a presumption favoring
confidentiality. Thus, the defendant must carry the devoir of
persuasion to show that disclosure is necessary to mounting an
adequate defense. See Lewis, 40 F.3d at 1335; Giry, 818 F.2d at
130. This burden is heavy, but not intractable. If, for example,
the informant is the sole participant, other than the accused, in
the transaction charged, or if the informant is the only person who
is in a position to amplify or contradict crucial testimony of
government witnesses, then the court may order disclosure. SeeRoviaro, 353 U.S. at 64; Martinez, 922 F.2d at 920-21; United
States v. Bibbey, 735 F.2d 619, 621 (1st Cir. 1984). If, however,
the informant is merely a source one who does little more than
put a flea in an officer's ear the court almost always will deny
disclosure. See Lewis, 40 F.3d at 1335; United States v. Batista-
Polanco, 927 F.2d 14, 19-20 (1st Cir. 1991).
 Here, the appellant alleges that the confidential
informants' identities would have been helpful in his defense. He
notes that CI-1 identified a suspect named Louie as the person who
was selling large quantities of cocaine at 151 Reynolds Avenue;
that he obviously is not Louie (after all, the appellant is a six
foot tall Caucasian who weighs 300 pounds a far cry from a five
foot eight inch Hispanic of medium build); that his most promising
defense involved pointing a finger at Louie; and that, through CI-
1, he might have discovered Louie's identity, or, at least, focused
the jury's attention on a suspect other than himself. The
appellant adds that he also needed to know CI-2's identity because
CI-2 could testify that another cocaine transaction took place at
151 Reynolds Avenue after he (Robinson) was detained. The
appellant claims that this information would lend credence to the
idea that Louie was the real culprit.
 The appellant says that the facts of this case mandate
disclosure under our decision in Zaroogian v. United States, 367
F.2d 959 (1st Cir. 1966). We demur. Assuming, without deciding,
that Zaroogian remains good law, the rule elucidated there applies
only when a defendant shows that an informant would make a valuable
material witness for the defense. Id. at 962. The appellant has
not made such a showing.
 Here, the informers' evidence, though desired by the
appellant, was peripheral to the crimes charges. In the last
analysis, the jury convicted Robinson based not on what CI-1 or CI-
2 said or did, but on his culpable presence at a locus where
substantial amounts of contraband were found. Neither CI-1 nor
CI-2 could be expected to shed much light on these circumstances. 
Furthermore, even if the elusive Louie existed and could be run to
ground, a showing that Louie was guilty would not exonerate the
appellant. Hence, learning Louie's identity would be only
marginally relevant, if relevant at all, to the charges confronting
Robinson.
 Where, as here, the government's informants neither
participated in nor witnessed the events that inculpated the
defendant and led to his arrest, the informants ordinarily are
deemed mere tipsters. See, e.g., Martinez, 922 F.2d at 921; Giry,
818 F.2d at 130; United States v. Alonzo, 571 F.2d 1384, 1387 (5th
Cir. 1978). There is nothing in the record that removes this case
from the sweep of that generalization. Moreover, we have held with
a regularity bordering on the echolalic that tipsters, as opposed
to informants who are active participants in the crimes charged,
generally deserve anonymity. See, e.g., Martinez, 922 F.2d at 921;
Giry, 818 F.2d at 130; United States v. Hemmer, 729 F.2d 10, 15
(1st Cir. 1984). Consequently, the lower court did not abuse its
discretion in refusing to force the government to divulge the
informants' identities.
III. SENTENCING
 The appellant's sentencing challenge links various
asseverations, all of which implicate the district court's
determination that the offenses of conviction involved crack
cocaine as opposed to powdered cocaine. We treat these
asseverations as a single forensic unit.
 The federal sentencing guidelines penalize trafficking in
crack cocaine much more harshly than trafficking in cocaine
hydrochloride (cocaine powder). See United States v. Armstrong,
116 S. Ct. 1480, 1492 (1996). After an evidentiary hearing, the
district court computed the appellant's offense level on the basis
that all the contraband 35.33 grams (including an amount
attributable to the conversion of the cash seized, see USSG 
2D1.1, comment. (n.12)) was crack cocaine. This determination
yielded a guideline sentencing range (GSR) of 108 to 135 months,
and the judge imposed a 121-month incarcerative sentence.
 In this court, as below, the appellant challenges the
premise on which his sentence rests. He maintains that the
government proved nothing beyond the fact that the substance was
cocaine base and that, therefore, his offense level should have
been set on the basis of cocaine hydrochloride (which would have
produced a GSR of 18 to 24 months and led to a much gentler
sentence). This argument takes dead aim at the district court's
admission of detective Gannon's testimony to the effect that the
hard, rock-like substance found on the premises was crack. In the
appellant's view, Gannon, who has no formal scientific training,
was unqualified to render such an opinion.
 We start with the Sentencing Commission's handiwork. 
Since 1993, the Commission has acknowledged that, in common
parlance, "cocaine base" means "crack," and that this equivalency
is cognizable for purposes of computing a defendant's GSR. USSG
2D1.1(c)(n.(D)). The Commission further defines crack as "the
street name for a form of cocaine base, usually prepared by
processing cocaine hydrochloride and sodium bicarbonate, and
usually appearing in a lumpy, rocklike form." Id. Forms of
cocaine base other than crack are treated as cocaine hydrochloride
for purposes of calculating the GSR. See USSG App. C, Amend. 487;
see also United States v. Abdul, 122 F.3d 477, 479 (7th Cir.),
cert. denied, 118 S. Ct. 643 (1997).
 To implement these directions, it is important to grasp
certain rudimentary facts. Cocaine base (C17H21NO4) is a natural
alkaloid found in the coca leaf. It is a "base" because it reacts
with acids to produce a salt. The naturally occurring compound is
usually processed by dissolving a paste made from the coca leaf in
hydrochloric acid (HCl) and water (H2O) to create a salt: cocaine
hydrochloride (C17H22ClNO4), also known as cocaine (in its powdered
form). The salt is water-soluble and may be snorted or dissolved
in a liquid and injected, but it cannot be smoked.
 There are several ways to convert this salt into a base. 
The most common method is to dissolve the salt in baking soda
(NaHCO3) and water (H2O) and boil the mixture until it solidifies
and dries. The resulting substance is chemically identical to a
naturally occurring cocaine base. In appearance, however, the
substance is hard and rock-like. This artificially manufactured
base is known in the vernacular as "crack" or "crack cocaine." SeeAbdul, 122 F.3d at 478; United States v. Sloan, 97 F.3d 1378, 1382
(11th Cir. 1996), cert. denied, 117 S. Ct. 2459 (1997). Although
crack is not water-soluble, it can be smoked.
 Against this backdrop, the district court's admission of
detective Gannon's testimony is fully supportable. The Federal
Rules of Evidence do not pertain during the sentencing phase of a
criminal trial. See United States v. Gonzalez-Vazquez, 34 F.3d
19, 25 (1st Cir. 1994). Rather, the sentencing court may consider
evidence that would be inadmissible at trial as long as that
evidence possesses "sufficient indicia of reliability to support
its probable accuracy." USSG 6A1.3(a). Under this generous
formulation, the court has wide latitude to decide what type of
proof is, or is not, sufficiently trustworthy to enter into the
sentencing calculus. See United States v. Brewster, 127 F.3d 22,
27 (1st Cir. 1997); United States v. Tardiff, 969 F.2d 1283, 1287
(1st Cir. 1992).
 In this case, the district judge acted within her
discretion in allowing Gannon's testimony. Even in a trial
setting, we often have permitted law enforcement officers, not
formally trained as "experts," to furnish opinions based on their
real-world experience. See, e.g., United States v. Valle, 72 F.3d
210, 215 (1st Cir. 1995) (noting that courts regularly allow
testimony from experienced narcotics agents anent matters such as
"dosages, prices, and other particulars endemic to the ingestion
and distribution of crack cocaine"); United States v. Rivera, 68
F.3d 5, 8 (1st Cir. 1995), cert. denied, 116 S. Ct. 970 (1996);
United States v. Tejada, 886 F.2d 483, 486 (1st Cir. 1989). This
is merely a reflection that "[e]xpertise is not necessarily
synonymous with a string of academic degrees or multiple
memberships in learned societies." United States v. Hoffman, 832
F.2d 1299, 1310 (1st Cir. 1987). By like token, "proof based upon
scientific analysis or expert testimony is not required to prove
the illicit nature of a substance." United States v. Valencia-
Lucena, 925 F.2d 506, 512 (1st Cir. 1991); accord United States v.
Walters, 904 F.2d 765, 770 (1st Cir. 1990); United States v. Paiva,
892 F.2d 148, 157 (1st Cir. 1989); United States v. Ladd, 885 F.2d
954, 960 (1st Cir. 1989).
 These precedents are persuasive here. The government
laid a proper foundation for Gannon's testimony by introducing a
chemical analysis in the form of a pharmacologist's report proving
that, chemically, the contraband was cocaine base. Chemical
analysis cannot distinguish crack from any other form of cocaine
base because crack and all other forms of cocaine base are
identical at the molecular level. Thus, no further scientific
testimony would have been of any conceivable assistance, and we
will not require the government to indulge in an empty exercise.
 This brings us to Gannon's testimony. The sentencing
judge did not specify whether she admitted this testimony as a lay
opinion or as an opinion proffered by an expert who possessed
practical as opposed to academic credentials, probably because the
distinction is immaterial for purposes of this case. Either way,
it is clear that the sentencing court has discretion to admit the
opinion evidence of a reliable witness who possesses specialized
knowledge (here, experience in dealing with crack and familiarity
with its appearance and texture). See Paiva, 892 F.2d at 160;
Ladd, 885 F.2d at 959-60.
 Such testimony is particularly helpful in a case like
this one. Crack can be differentiated from other cocaine bases
only by appearance and texture, and the applicable guideline, which
refers to crack as "the street name" for a particular form of
cocaine base, USSG 2D1.1(c)(n.(D)), strongly suggests that
knowledge of what dealers and users consider to be crack may be a
satisfactory experiential base for opinion evidence. Gannon, a
veteran narcotics investigator who worked undercover for several
years as both a "seller" and a "buyer" in sting operations, had an
intimate familiarity with the crack trade. Accordingly, the
district court did not err in permitting him to identify a
particular substance as crack cocaine. See Hoffman, 832 F.2d at
1310 (upholding admission of opinion testimony offered by "veteran
DEA agent" and noting that "[i]n a rough-and-ready field such as
[hard-core drug trafficking], experience is likely the best
teacher").
 Despite this conclusion, our journey must continue. The
appellant also contends that the district court erred in finding
that the contraband was crack. This contention need not occupy us
for long.
 Whether a particular substance is crack or cocaine for
purposes of the sentencing guidelines is a question of fact to be
determined by the court. See Edwards v. United States , ___ S. Ct.
___, ___ (1998) [1998 WL 201395, at *2]. When the nature of an
illicit substance is material at sentencing, the government has the
burden to prove the substance's identity, but its proof need only
be by a preponderance of the evidence. See United States v.
Legarda, 17 F.3d 496, 499 (1st Cir. 1994); Tardiff, 969 F.2d at
1289. The sentencing court's factfinding must be accepted unless
it is clearly erroneous. See United States v. St. Cyr, 977 F.2d
698, 701 (1st Cir. 1992); United States v. David, 940 F.2d 722, 739
(1st Cir. 1991).
 Here, Judge Lisi's factfinding is amply supported. The
government introduced the pharmacologist's laboratory report to
establish the chemical composition of the substances seized from
the searched premises. The report identified the substances as
cocaine base. Detective Gannon, drawing on his experience and
remarking the appearance and hard, rock-like texture of the cocaine
base seized from 151 Reynolds Avenue, identified it as crack. 
Finally, the appellant testified at the disposition hearing and,
although he denied that he sold drugs from his abode, he admitted
that he intended to sell the packets of drugs seized from his pants
pocket, and that he bought and sold "rock." On the strength of
this proof, and in the utter absence of any controverting evidence,
Judge Lisi's finding easily survives clear-error review.
IV. CONCLUSION
 We need go no further. For aught that appears, the
appellant was fairly tried and appropriately sentenced. We add
only one small coda: although the guidelines punish offenders who
traffic in crack cocaine very severely, especially in relation to
those who traffic in powdered cocaine, that is a permissible policy
choice articulated by Congress and the Sentencing Commission. 
Therefore, the courts are obliged to give it effect.

Affirmed.