837 A.2d 1131 (2003)
365 N.J. Super. 27
STATE of New Jersey, Plaintiff-Respondent,
v.
Andre JOHNSON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 2003.
Decided December 23, 2003.
*1133 Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Kirsch, of counsel, and on the brief).
Sama Holmes, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General of New Jersey, attorney; Ms. Holmes, of counsel, and on the brief).
Before Judges HAVEY, FALL,[1] and PARRILLO.
*1132 The opinion of the court was delivered by PARRILLO, J.A.D.
Following bifurcated trials by jury, defendant Andre Johnson was found guilty of third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and fourth-degree hindering apprehension, N.J.S.A. 2C:29-3(a)(3) (Middlesex County Indictment No. 02-02-153) and then second-degree prior-felon in possession of a weapon, N.J.S.A. 2C:39-7(b) (Middlesex County Indictment No. 02-02-154). Defendant moved for a new trial on the ground that defense counsel was ineffective for failing to file a meritorious motion to suppress evidence of the handgun.[2] After a hearing, his motion for a new trial was denied. Thereafter, defendant was sentenced to a seven-year term with a five-year parole bar on the prior-felon weapon-possession conviction, and to concurrent terms of four-years with a two-year parole bar on the unlawful possession of a weapon conviction and to eighteen months on the hindering apprehension conviction. Appropriate fees and penalties were also imposed.
On appeal, defendant raises the following issue for our consideration:
DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO FILE A CLEARLY MERITORIOUS MOTION TO SUPPRESS THE GUN WHICH WAS ILLEGALLY SEIZED WITHOUT A SEARCH WARRANT.
The salient facts adduced at trial, and upon which defendant relies in support of his argument that he has a meritorious Fourth Amendment claim, are as follows. After receiving a domestic violence complaint on December 8, 2001 alleging that Johnny Holloway, Jr. was in possession of a handgun, police went to his father's residence, where they believed he had retreated, to execute two arrest warrants for domestic violence and making terroristic threats. At 11:00 a.m., several police officers arrived at the home and asked the owner, Johnny Holloway, Sr., for permission to enter after first advising him that they had multiple warrants for his son's arrest and were concerned over the presence of a handgun. Holloway, Sr. responded *1134 that his son was upstairs in the shower and that he had no problem with the police entering his home to secure his son's arrest.
Holloway, Sr. remained outside the home as requested while the police entered, went upstairs, arrested Holloway, Jr., and frisked him for the weapon. When no gun was found and the arrestee failed to respond to police inquiries about its whereabouts, Patrolman Henry took Holloway, Jr. outside and put him in the squad car, then went back into the home to begin searching for the gun.
In the meantime, Sergeant McCormick encountered defendant on the telephone in the kitchen. When defendant ignored repeated requests to hang up, Sergeant McCormick grabbed the phone out of his hand, hung it up, and frisked defendant. When asked why he was in the home, defendant replied that he was "just visiting" and asked, in turn, whether the police had a search warrant. Sergeant McCormick explained that the owner of the premises had given them permission to enter, that they had active warrants for Holloway, Jr.'s arrest, and there was a gun involved. Sergeant McCormick then asked defendant to do him "a favor" and leave the house because the police needed thirty minutes to complete their investigation.
After complaining about the absence of a search warrant, defendant eventually agreed to leave and said he needed to "gather [his] stuff." According to Sergeant McCormick, defendant reached into a closet, grabbed some clothes to put on, gathered a brand new, boxed DVD player, put a small cardboard box (12 X 4 inches) into an empty, red-white-and-blue duffel bag and zippered it shut. As defendant started to walk toward the door with the bag and DVD player in hand, Sergeant McCormick stopped him and questioned him about why he put the cardboard box into the bag. After receiving conflicting answers from defendant, Sergeant McCormick seized the bag, pulled out the cardboard box, opened it, and found a loaded handgun inside. Defendant was arrested.
Defendant's version of this event was far different. Holloway, Jr. is his half-brother and defendant had been visiting with his mother and stepfather for three weeks. Responding to the police request to leave, defendant picked up his new, unused DVD player in its original box. In front of the DVD player was an "American bag" that he had never seen before and that he picked up and moved out of the way. When Sergeant McCormick asked him what was inside, defendant gave it to him and continued out of the home.
At no time did defense counsel file a motion to suppress evidence of the handgun. Once defendant was convicted of unlawful possession of the handgun and hindering apprehension, a second trial was held on the prior-felon handgun-possession charge and the State introduced evidence that defendant had a drug conviction from a 1981 incident. He was convicted of the prior-felon handgun charge as well. Thereafter a hearing was held on defendant's motion for a new trial, prior to sentencing, addressing his contention that he had a meritorious Fourth Amendment claim and that his trial counsel was ineffective for failing to pursue that claim. At the hearing on defendant's motion, trial counsel testified that he believed a motion to suppress would have lacked merit because, in his view, the owner of the home had consented to police entry. In denying defendant's motion for a new trial, the judge relied on another view, namely, that there was no need for a search warrant "because the police were looking for someone who had a gun."
We consider the issue raised by defendant on this appeal in light of this *1135 background. First, we reject outright the State's counter-argument that defendant waived his Sixth Amendment claim of ineffective assistance of counsel by not litigating below his Fourth Amendment claim to suppress the handgun found in his possession. There is absolutely no merit to the contention that defendant should not be allowed to vindicate on appeal his constitutional right to effective assistance of counsel where counsel's primary error is failure to make a timely request for the exclusion of illegally seized evidence that is often the most probative information bearing on the defendant's guilt or innocence. Although failure to move to suppress evidence constitutes a waiver of any objection at trial to the admission of evidence on the ground that it was unlawfully obtained, R. 3:5-7(f); State v. Cox, 114 N.J.Super. 556, 559-60, 277 A.2d 551 (App.Div.), certif. denied, 58 N.J. 93, 275 A.2d 149 (1971), and of the right to question the search on appeal on Fourth Amendment grounds, State v. Robinson, 224 N.J.Super. 495, 499, 540 A.2d 1313 (App.Div.1988), this procedural bar does not extend to Sixth Amendment claims of ineffective assistance of counsel where based on counsel's very failure to timely file a suppression motion. See Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). Defendant's Sixth Amendment claim of ineffective assistance of counsel is not in fact a Fourth Amendment claim directly controlled by Rule 3:5-7(f). Thus, while defendant's defaulted Fourth Amendment claim may be one element of his Sixth Amendment right to counsel claim, the two claims have separate identities, reflect different constitutional values, and are distinct both in nature and the requisite elements of proof. Kimmelman, supra, 477 U.S. at 375, 106 S.Ct. at 2583, 91 L.Ed.2d at 319.
And although ineffective assistance claims, generally, are more appropriately raised in collateral, post-conviction relief proceedings "because such claims involve allegations and evidence that lie outside the trial record[ ]", State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992), where, as here, we need not go dehors that record to resolve the claim of ineffective assistance of counsel, we may and should consider the issue on direct appeal. In this case, the post-trial evidentiary hearing on defendant's motion for a new trial, along with the trial itself, provide an adequately developed record upon which to evaluate defendant's ineffective assistance of counsel claim. That record contains both trial counsel's explanation of the reasons for his inaction and the trial judge's ruling on defendant's ineffective assistance claim.
Having established its cognizability on direct appeal, we proceed to the substantive merits of the claim. It is virtually axiomatic that in order for defendant to obtain relief based on ineffective assistance grounds, he is obliged to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. See, e.g., Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987). Where, as here, defense counsel's failure to litigate a Fourth Amendment claim is the principal allegation of ineffectiveness, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman, supra, 477 U.S. at 375, 106 S.Ct. at 2583, 91 L.Ed.2d at 319. Because we are persuaded that the alleged deficiency here, if proven, would clearly meet the prejudice prong *1136 of the Strickland test, that is, a successful motion would most likely have affected the outcome here, we focus primarily on the performance component.
While the failure to file a suppression motion may not constitute per se ineffective assistance of counsel, Kimmelman, supra, 477 U.S. at 382, 106 S.Ct. at 2586-87, 91 L.Ed.2d at 324, under the present facts and circumstances, given the dispositive significance of the evidence defendant claims should have been suppressed, such a lapse figures prominently in our assessment of counsel's performance. On this score, the reason proffered by trial counsel below, and reiterated by the State on appeal, is that Holloway, Sr., the homeowner, knowingly and voluntarily consented and therefore counsel was not deficient for failing to make the motion and even if made it would have been unsuccessful. This rationale, however, betrays a fundamental misunderstanding of Fourth Amendment law.
As we understand the record, the homeowner was first confronted with multiple warrants for his son's arrest and may not have been advised of his right to refuse consent, circumstances which militate against a finding that consent was knowingly and freely given. See Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797, 802 (1968); State v. Dolly, 255 N.J.Super. 278, 285-286, 605 A.2d 238 (App.Div.1991); State v. LaDuca, 89 N.J.Super. 159, 167, 214 A.2d 423 (App.Div.1965); and State v. Carty, 170 N.J. 632, 647, 790 A.2d 903 (2002); State v. Suazo, 133 N.J. 315, 319-20, 627 A.2d 1074 (1993); State v. Johnson, 68 N.J. 349, 354, 346 A.2d 66 (1975); State v. Chapman, 332 N.J.Super. 452, 466, 753 A.2d 1179 (App.Div.2000). In any event, the homeowner's permission appears limited to entry for purposes of effecting his son's arrest on the second floor. However, the police officers seemingly far exceeded the scope of the "invitation" since, by their own admission, they re-entered the premises once Holloway, Jr. was safely secured in the squad car in order to search the interior of the home for the handgun. The search appears not only to have been unauthorized by the homeowner, but well beyond the limited "grabbable" area surrounding and within the "immediate reach" of Holloway, Jr., as otherwise incidental to his arrest. See Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969); State v. Rose, 357 N.J.Super. 100, 103-04, 813 A.2d 1279 (App.Div.2003). Contrary to the trial judge's reasoning, searches beyond this physical limitation require a search warrant, easily obtained by sealing off the house and phoning a judge for a telephonic warrant. See, e.g., State v. Bolte, 115 N.J. 579, 598, 560 A.2d 644, cert. denied, 493 U.S. 936, 110 S.Ct. 330, 107 L.Ed.2d 320 (1989).
The record in this case reveals that defense counsel failed to file a timely suppression motion not due to strategic considerations, but because in his judgment, such a motion was frivolous and without merit. This, in turn, was based on his mistaken belief that consent to enter allowed for a full blown search and his misguided view that, in any event, Holloway, Sr. could freely and knowingly consent despite being first confronted with arrest warrants about to be executed and unaware of his right to refuse permission to search. Under the circumstances, we find counsel's decision unreasonable, that is, contrary to professional norms, and betrays a lack of the essential legal knowledge needed to meet the case of the prosecution. Given the critical significance of the evidence to his successful prosecution, we also find that defendant suffered prejudice from his attorney's failure to make a timely suppression motion.
*1137 On this record, defendant has established both prongs of the Strickland/Fritz test. By holding that defendant has a meritorious Fourth Amendment claim, however, we intimate no view as to whether a motion to suppress, if properly made, would ultimately have been successful. Of course, if a suppression motion had been filed, there would have been "a full airing of the evidence before trial." State v. Jordan, 115 N.J.Super. 73, 76, 278 A.2d 223 (App.Div.), certif. denied, 59 N.J. 293, 281 A.2d 806 (1971). See also R. 3:5-7. Since that did not occur here, we are at a loss as to whether the prosecutor refrained from developing additional information at trial because, in light of the waiver of objection to admissibility, R. 3:5-7(f), it was not relevant to the issues being tried. After all, the State had the right to assume that the validity of the search was not in issue because defendant did not file a motion to suppress the handgun, State v. McLendon, 331 N.J.Super. 104, 109, 751 A.2d 148 (App.Div.2000), and was not obliged to present evidence of the lawfulness of the search in the absence of a suppression motion. State v. Gora, 148 N.J.Super. 582, 592, 372 A.2d 1335 (App.Div.), certif. denied, 74 N.J. 275, 377 A.2d 679 (1977).
So as not to penalize the State, we therefore remand the matter to ensure, upon proper motion by defendant, "a full hearing" of all such evidence. At this hearing, both the State and defendant, if he so wishes, may offer proofs on the legality of the search and seizure of the handgun. State v. Gaudiosi, 97 N.J.Super. 565, 568, 235 A.2d 680 (App.Div.1967). If, at the conclusion of the evidentiary hearing, the judge grants defendant's motion to suppress, the judgment of conviction, based on evidence obtained during the illegal search, must be vacated. Needless to say, if the motion is denied, the judgment of conviction stands.
The matter is remanded for proceedings consistent with this opinion.
NOTES
[1] Judge Fall did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] Defendant also based his ineffective assistance of counsel claim on his attorney's failure to inform him that the conviction on the prior-felon handgun charge mandated a five year period of parole ineligibility, a term substantially longer than the five-year flat sentence offered by the State as part of a plea deal. Defendant has since abandoned this feature of his ineffective assistance of counsel claim.