**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3315-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

IVAN HERRERA MOLINA,
a/k/a LOUIS S. MORENO,

     Defendant-Appellant.

_____

Submitted February 3, 2020 – Decided May 5, 2020

Before Judges Messano and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-12-3513.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan Brody, Assistant Deputy Public Defender, of counsel and on the brief).

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Jason Magid, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Ivan Herrera Molina, appeals from his trial convictions for aggravated assault and related firearms offenses. He contends for the first time on appeal that his trial counsel rendered ineffective assistance by failing to file a pretrial motion to suppress evidence found during a search of defendant's bedroom in a boarding house and by failing to seek a <u>Wade/Henderson</u>[1] hearing to challenge a single-photo identification procedure. Defendant also claims for the first time on appeal that the trial court erred by allowing the jury to hear inadmissible hearsay evidence. Specifically, the State's ballistics expert commented that a non-testifying peer concurred with the expert's conclusion that the shell casing recovered in defendant's bedroom matched the shell casing found at the scene of the shooting.

We have reviewed the record in light of the applicable principles of law and affirm the trial verdict with respect to the ballistic expert's testimony concerning the peer review process. Although the witness's brief reference to the non-testifying expert's conclusions was inadmissible hearsay, this small

---

[1] <u>United States v. Wade</u>, 388 U.S. 218 (1967) (holding that a post-indictment lineup is a critical stage of proceedings at which the defendant was entitled to the aid of counsel, and that the State having denied the presence of counsel a hearing was required to determine whether the witness's in-court identification was admissible); <u>State v. Henderson</u>, 208 N.J. 208 (2011) (requiring a hearing to determine the admissibility of identification evidence when a defendant presents some evidence of suggestive police practices).

A-3315-17T1

portion of the expert testimony, when considered in the context of the overwhelming evidence of guilt adduced by the State at trial, was not capable of producing an unjust result and thus does not rise to the level of plain error. R. 2:10-2.

Although we reject defendant's contention regarding the hearsay testimony, the current record does not allow us to resolve defendant's ineffective assistance claim. We therefore remand the matter for the trial court to make findings of fact and law with respect defendant's Fourth Amendment and Wade/Henderson contentions in view of the two-pronged test for ineffective assistance of counsel claims spelled out in Strickland v. Washington, 466 U.S. 688 (1984).

## I.

We presume the parties are familiar with the facts; therefore, we briefly summarize the facts that are relevant to the appeal. The State presented evidence at trial that defendant and Leopold Martinez-Ventura engaged in a physical altercation after a soccer game. Neither was injured. Defendant went inside a nearby rooming house on Carmen Street where he resided. He emerged with a rifle. Defendant fired a single shot that missed Martinez-Ventura and his friends. Defendant fled the scene in a vehicle.

Martinez-Ventura and several of his friends ran from the scene and flagged down a police officer on patrol. The officer heard the single gunshot and was advised by the police dispatcher that the Camden City ShotSpotter system had detected gunfire in the area. The officer did not speak Spanish but was able to discern that Martinez-Ventura and his friends had information concerning the gunshot. They directed the officer to the rooming house on Carmen Street. The officer canvassed the area outside the premises and located a single spent shell casing. That shell casing, which was in pristine condition, bore the mark FC .30-06. It was found approximately ten feet from the front steps of the boarding house. Spanish-speaking officers soon arrived at the scene and were able to communicate with Martinez-Ventura and his friends. They told the officers that they had observed defendant, who they referred to by the nickname El Hueso, run into the residence and exit with the rifle.

The officers entered the boarding house and conducted a protective sweep search. They located four individuals inside and learned from those individuals that there was a fifth resident, defendant, who was not present. The four residents who were present each executed a consent-to-search form authorizing police to search their individual bedrooms. The officers were told that defendant's bedroom was the first door on the left inside the house. At some

4

point the officers entered defendant's bedroom and searched it.[2] That search uncovered two rounds of live ammunition—a .38 caliber round and a shotgun round—and a spent FC .30-06 rifle shell casing. In addition, they seized several legal documents, including defendant's passport. The rifle was never recovered.

The next day, police met with Martinez-Ventura. They showed him the photo from the passport that had been seized from defendant's bedroom. The victim confirmed that defendant was the person who had discharged the weapon. Martinez-Ventura knew defendant and referred to him by the nickname El Hueso.

Defendant later provided a statement to police in which he acknowledged that he had engaged in a verbal and physical altercation with several individuals who were at the soccer field near his residence. Defendant claimed that he had not retrieved a rifle, but rather had retrieved a baseball bat. He also claimed that

---

[2]  The parties' briefs refer to an initial search of defendant's house as a "protective sweep search." The parties' briefs also allude to a subsequent search of defendant's bedroom authorized by a search warrant. The record is not clear whether the shell casing and passport found in defendant's bedroom were discovered during an initial sweep search or were later discovered during a search authorized by the warrant. Defendant speculates that the police unlawfully discovered the shell casing and passport during the protective sweep search, rendering that evidence subject to the exclusionary rule.

although he was aware of the ammunition in his bedroom, it belonged to a prior tenant.

The State at trial presented evidence from a ballistics expert who testified that the FC .30-06 shell casing found outside the rooming house was fired from the same rifle that fired the FC .30-06 shell casing found in defendant's bedroom.

Based on this evidence, a jury found defendant guilty of unlawful possession of a firearm, N.J.S.A. 2C:39-5(c)(1), possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1), and three different variations of aggravated assault, N.J.S.A. 2C:12-1(b)(1), (2), (4). Defendant was sentenced on the Graves Act firearms conviction to a five-year prison term with the mandatory forty-two-month period of parole ineligibility. After merger, he was sentenced on the aggravated assault conviction under N.J.S.A. 2C:12-1(b)(1) to a concurrent five-year term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

II.

Defendant raises the following contentions for our consideration:

POINT I

BECAUSE DEFENSE COUNSEL FAILED TO REQUEST A HEARING ON EITHER THE PROTECTIVE SWEEP OF THE ROOMING HOUSE OR THE SINGLE-PHOTO IDENTIFICATION

6

PROCEDURE, DEFENDANT WAS DEPRIVED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

    A. THE SINGLE-PHOTO IDENTIFICATION PROCEDURE.

    B. THE PROTECTIVE SWEEP.

    C. INEFFECTIVE ASSISTANCE OF COUNSEL.

<u>POINT II</u>

THE COURT ERRED IN ADMITTING DAMAGING INADMISSIBLE HEARSAY FROM THE STATE'S EXPERT, REQUIRING REVERSAL.

III.

We first address defendant's contention that the trial court erred in allowing the State's ballistics expert to mention during his direct examination that another expert, who was not called to testify, concurred that both shell casings had been fired from the same weapon. During the direct examination, the State's expert testified, "[w]e have 100 percent peer review meaning if there is [sic] 75 pieces of evidence, all 75 pieces of evidence are looked at under the comparison microscope. [The peer reviewer] either agrees with me or disagrees with my findings." The expert added, "[i]n this particular case, he agreed with my findings." No objection was made to this statement.

7

We hold that it was improper for the expert to testify as to the opinion rendered by a non-testifying peer reviewer. See State v. Branch, 182 N.J. 338, 349–50 (2005) ("[B]oth the Confrontation Clause and the hearsay rule are violated when, at trial, a police officer conveys, directly or by inference, the information from a non-testifying declarant to incriminate the defendant in the crime charged."). We agree with defendant that the shell casing evidence was an important part of the State's case.  However, we do not believe the expert's brief, isolated reference to another examiner's concurring opinion had the capacity to produce an unjust result when considered in light of the strength of the other evidence of guilt that the State adduced at trial.[3]  R. 2:10-2.  We note that defendant on appeal has not presented expert opinion contesting the conclusion that the two shell casings had been fired from the same rifle.  We further note that defendant does not contest that both shell casings bear the same identification number—a conclusion that does not depend on a forensic expert's microscopic examination.

---

[3] We note that defendant on appeal intimates that trial counsel's failure to object to the expert's hearsay statement is another instance of ineffective assistance.

A-3315-17T1

IV.

We next address defendant's contention that he was denied effective assistance of counsel. In doing so, we first acknowledge the legal principles that apply.

Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)); State v. Fritz, 105 N.J. 42, 58 (1987). To establish a violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland. Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Ibid. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of

9

reasonable professional assistance." Id. at 689. The fact that a trial strategy fails to obtain for a defendant the optimal outcome is insufficient to show that counsel was ineffective. State v. DiFrisco, 174 N.J. 195, 220 (2002) (citing State v. Bey, 161 N.J. 233, 251 (1999)).

The second prong of the Strickland test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different than if counsel had not made the errors. Id. at 694. This assessment is necessarily fact-specific to the context in which the alleged errors occurred. See id. at 695 (noting the different questions posed when a defendant challenges a conviction rather than a sentence). When a defendant challenges a conviction, the second Strickland prong is particularly demanding: "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached." State v. Allegro, 193 N.J. 352, 367 (2008) (quoting State v. Castagna, 187 N.J. 293, 315 (2006)).

We first consider defendant's contention that his attorney was ineffective for failing to file a motion to suppress evidence seized from his bedroom. As we have already noted, the record before us is unclear whether the shell casing

and passport were discovered and seized during the protective sweep search officers conducted when they initially canvassed the rooming house or were instead seized during the execution of a search warrant. See supra note 2. We note that a "protective sweep search" pursuant to Maryland v. Buie, 494 U.S. 325 (1990), authorizes police to locate persons, not small objects such as a shell casing or passport. See also State v. Davila, 203 N.J. 97, 114 (2010) (observing protective sweep searches "may extend only to a cursory inspection of those spaces where a person may be found" (quoting Buie, 494 U.S. at 335)).

The record developed at trial does not allow us to determine whether competent counsel would have filed a motion to suppress and whether any such motion would have resulted in the suppression of the shell casing or passport. See State v. Johnson, 365 N.J. Super. 27, 37 (App. Div. 2003) (noting because a suppression motion was never filed, a hearing on the issues was never held, and thus the State had no opportunity to justify the search).

Similarly, we are not able on this record to resolve defendant's contention that counsel rendered constitutionally defective assistance by failing to challenge the manner in which the victim identified defendant as the person who fired the rifle following the altercation. See Henderson, 208 N.J. at 276–78, 288–299 (summarizing best practices adopted by the Attorney General

Guidelines in administering photo lineups and articulating the current framework for assessing and presenting identification procedures at pretrial hearings, at trial, and in jury instructions). The use of a single photograph, rather than an array of multiple photos, appears to be inconsistent with an Attorney General Directive concerning identification procedures police must follow. Attorney General Guidelines for Preparing and Conducting Photo and Live Lineup Identification Procedures 2 (Apr. 18, 2001) (advising photo lineup administrators to "[i]nclude a minimum of five fillers (nonsuspects) per identification procedure").

However, we cannot determine on the record before us whether defendant would have been entitled to a Wade/Henderson hearing or whether the outcome of any such hearing would have changed the result of the trial. See Henderson, 208 N.J. at 289 (directing trial courts to remedy potential misidentifications through either suppression of the identification evidence or through appropriate, tailored jury charges); Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identifications" (rev. July 19, 2012) (supplying the appropriate jury instructions in cases involving in-court and out-of-court identification); see also R. 3:11(d) (providing remedies for failure to record out-of-court identification procedures, including suppression of the identification,

redaction, and/or the fashioning of an appropriate jury charge). It appears that Martinez-Ventura knew defendant and had referred to him by a nickname before being shown the single photograph. State v. Pressley, 232 N.J. 587, 592–93 (2018) (commenting that "confirmatory identifications" where a witness identifies someone he or she already knows but can only identify by a street name are not considered suggestive). Furthermore, defendant had admitted to police that he was involved in an altercation with Martinez-Ventura and his friends. In these circumstances, the assailant's identity may not have been a contested issue at trial, which would impact the analysis under both prongs of the Strickland test.

V.

We recognize that as a general matter, ineffective assistance claims are raised in collateral, post-conviction relief proceedings rather than direct appeals such as the one presently before us "because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). We elect in this case to remand the matter for the trial court to make appropriate findings of fact and law with respect to defendant's contentions. Accord Johnson, 365 N.J. Super. at 37 (remanding to the trial court for a "full hearing" on a defendant's ineffective assistance claims raised on direct appeal).

We intimate no view as to whether a motion to suppress physical evidence or to convene a Wade/Henderson hearing, if properly made, would ultimately have been successful.

The trial court on remand may require the parties to produce such information and briefs, as the court deems appropriate. We also leave it to the discretion of trial court whether to permit or require testimony from witnesses.

Affirmed in part and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3315-17T1