**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2703-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANIEL A. MEDINA,

    Defendant-Appellant.

_____

Submitted April 17, 2024 – Decided February 18, 2025

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 14-08-2470.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

    The opinion of the court was delivered by

GUMMER, J.A.D.

Defendant Daniel A. Medina appeals from an order denying his petition for post-conviction relief (PCR), which the PCR court entered after conducting an evidentiary hearing on remand. Defendant claims his plea counsel rendered ineffective assistance by failing to move to suppress evidence seized from his residence. After hearing testimony from defendant and his plea counsel, the PCR court on remand held defendant had failed to establish plea counsel's performance was deficient under the first prong of the standard articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted under our State Constitution by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Perceiving no error in that decision, we affirm.

I.

In August 2012, defendant was serving parole following his release from prison. As set forth in a New Jersey State Parole Board Investigation Report, law-enforcement officers, who were members of a Gang Reduction and Aggressive Supervised Parole (GRASP) team,[1] drove to defendant's residence

---

[1] As described in the report, "[t]he purpose of the GRASP program is to identify, monitor and aggressively supervise parolees who were identified as gang members while incarcerated and to ensure strict compliance with the terms of their parole."

A-2703-22

on August 30, 2012. According to the parole officer who wrote the report, when they arrived, defendant was "standing on the front step of his residence" and after seeing the officer's vehicle, defendant "ran into the house and shut and locked the front door." Law-enforcement officers entered the house, saw a stack of cash on the kitchen counter, and conducted a warrantless search of his residence. They seized heroin, a stun gun, $2,747 in cash, a digital scale, a stamp press commonly used to package controlled dangerous substances (CDS), and other drug related packaging materials. They also arrested defendant.

A grand jury charged defendant with various drug and weapons offenses, including first-degree maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4, and fourth-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(a). In a superseding indictment, the grand jury charged defendant with additional offenses based on events occurring during the weeks following his arrest, including second-degree tampering with a witness, N.J.S.A. 2C:28-5(d). In a subsequent indictment based on events that took place in 2015, defendant was charged with three counts of aggravated assault, N.J.S.A. 2C:12-1(b)(1) to (2), and one count of possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).

3

Pursuant to a negotiated agreement with the State, defendant in 2016 pleaded guilty to first-degree maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4; second-degree tampering with a witness, N.J.S.A. 2C:28-5(d); and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2). As part of that agreement, the State recommended an aggregate sentence of fourteen years in prison with a seven-year period of parole ineligibility and the dismissal of the remaining charges.

At the plea hearing, defendant was represented by plea counsel on the CDS indictment and by another lawyer on the aggravated-assault indictment. In addition to the representations made by plea counsel, the other lawyer advised the court: "[W]e've gone over all the discovery and we've gone over his defenses. [Defendant] understands all the consequences and the potential penalties and I believe he's been fully informed and [is] ready to waive his right to trial and plead guilty . . . ." Defendant testified he had consulted with both counsel in completing the plea forms and was satisfied with their services.

Represented by a new lawyer from a different law firm, defendant subsequently moved to withdraw his guilty plea. During oral argument, defense counsel made no mention of plea counsel's purported failure to file a suppression motion. In a comprehensive oral opinion, the court denied defendant's motion

and subsequently imposed a sentence consistent with the sentence the State had recommended as part of the plea agreement. Defendant filed a direct appeal. We subsequently dismissed the appeal as withdrawn. State v. Medina, No. A-4628-16 (App. Div. Nov. 16, 2017).

Defendant filed a PCR petition, an amended petition, and a supporting certification. He claimed his trial counsel had been ineffective in several ways, including in failing to move to suppress the evidence seized during the search of his residence. Without conducting an evidentiary hearing, the PCR court entered an order denying his petition. The court found a suppression motion would have been unsuccessful because, based on a parole officer's investigation report, law-enforcement officers had a reasonable suspicion defendant had violated the conditions of his parole and, thus, trial counsel was not ineffective by failing to file a meritless motion.

Defendant appealed the denial of his petition. We affirmed the order in all respects except one: we reversed the aspect of the order denying defendant's claim his counsel had been ineffective in not filing the suppression motion and remanded for the PCR court to conduct an evidentiary hearing regarding that claim. State v. Medina, No. A-1390-19 (App. Div. Aug. 11, 2021) (slip op. at 27, 34).

Noting the State had not submitted competent evidence to support its version of the events leading to the search of defendant's residence, we concluded defendant's version of the events, supported by his verified petitions and certification, made "a prima facie showing there is a reasonable probability a motion to suppress would have been successful." Id. at 14, 20. We declined to determine whether the suppression motion would have been successful, "recogniz[ing] there are many reasons trial counsel may have decided not to file the motion." Id. at 24. We referenced one reason a defendant and his counsel might decide not to move to suppress: "defendant and his counsel may have made a well-reasoned decision not to file a motion to suppress to take advantage of a plea offer that might have been withdrawn if a motion to suppress had been filed and lost." Ibid.

We decided "only that defendant made a prima facie showing of ineffective assistance of counsel under the Strickland standard based on counsel's failure to file the motion," which entitled him to an evidentiary hearing on that issue. Id. at 24-25. We remanded with the following instructions:

> [W]e remand for the court to conduct an evidentiary hearing to consider the reasons counsel did not file a suppression motion, and to determine whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "[I]f

counsel acted for sound strategic reasons, [his] performance may not have been deficient." [State v.] Fisher, 156 N.J. [494,] 507 (1998). In that event, the court need not address the merits of the suppression motion to assess whether defendant was prejudiced by his counsel's purported error because defendant will have failed to establish his counsel's performance was deficient under Strickland's first prong. See Strickland, 466 U.S. at 700 (finding a failure to establish either prong of the Strickland standard requires denial of a PCR petition); State v. Nash, 212 N.J. 518, 542 (2013) (same).

If the court determines trial counsel's performance was deficient by failing to file the suppression motion, the court must also consider at the evidentiary hearing the merits of the suppression motion to determine if, but for counsel's error in failing to file the motion, there is a reasonable probability the result of the proceeding against defendant would have been different. See Strickland, 466 U.S. at 694. Of course, if the court determines at the hearing that trial counsel's performance was deficient and the evidence would have been suppressed, the court shall grant defendant's petition and vacate his convictions on the offenses to which he pleaded guilty pursuant to the plea agreement. If the court finds either counsel's performance was not deficient or that defendant suffered no prejudice from the purported error in failing to file the motion to suppress, the court shall deny the PCR petition.

[Id. at 25-26 (footnote omitted).]

During the evidentiary hearing on remand, the State called as its witness

defendant's plea counsel. When he represented defendant, counsel had been

7

practicing law for about forty years with a focus on criminal law. Counsel testified he was not defendant's first lawyer; defendant had retained him two years before he pleaded guilty. Counsel could not recall how often he had met with defendant, but his "normal practice" was to "meet with clients a number of times before any court proceedings." Counsel also testified it was his practice to review with his clients "everything that was part of discovery." Counsel recalled discussing with defendant "many times" his "sentencing exposure," which was "life . . . because of the first-degree manufacturing charge, and . . . because of his prior record."

When asked if he had considered filing a motion to suppress evidence in this case, counsel responded:

> We spoke about that. I didn't believe that it had merit. He was on parole at the time, which would not preclude me from filing a motion to suppress, but would become much more difficult.[2] He had much less of an expectation of privacy of his residence because he was on parole. We discussed that.
>
> And most importantly in his case, with the life exposure, I knew from my practice in Camden County, Burlington County and Gloucester County specifically

---

[2] Defendant concedes in his merits brief that "a parolee does not enjoy the same freedoms as an ordinary citizen," citing State v. Maples, 346 N.J. Super. 408, 412-13 (App. Div. 2002). See also H.R. v. N.J. State Parole Bd., 457 N.J. Super. 250, 262-63 (App. Div. 2018) ("Parole supervision already severely diminishes [defendant's] privacy and personal autonomy").

that once a motion is filed, any offer that is made pre-trial is normally removed. So, in other words, if you file a motion and you're not successful, the offer is usually withdrawn.

On cross-examination, defense counsel asked plea counsel how many times he had discussed with defendant a possible suppression motion. Plea counsel responded:

> I can't specifically tell you, but I can tell you that it would have been the topic of a discussion because that was the basis of the entire case. If the motion to suppress was successful, there would be no case.
>
> . . . .
>
> So, I'm sure we did discuss it. I can't tell you how many times. But I specifically do know that I did discuss it with him. I was aware of what the plea offer was, and I am certain that it would have been my practice to tell him if I didn't believe it had merit, which I did not believe it did, that if we filed the motion and were unsuccessful that the plea offer would be withdrawn and would escalate.

Plea counsel did not recall anything defendant may have told him about the possible suppression motion or the day of the search. When asked what he recalled about the factual allegations in the investigative report, plea counsel referenced the following factual assertions in the report: defendant was on parole, a parole officer and others went to defendant's home, they saw him outside of the house smoking a cigarette, and "[t]hey believed that he saw them

9

out there and quickly ran in the house and closed the door . . . ." He also testified the parole officer stated in the report defendant appeared to have an elevated heart rate and "they saw a stack of money in plain view on the table that was under a cell phone." Plea counsel acknowledged the only potential justification for the officers to enter defendant's residence was that defendant "hurriedly ran into the house after seeing people from the parole board there." When asked whether he believed running into the house after seeing parole officers was enough to support a violation of parole, counsel replied: it "could have cut both ways."

After plea counsel finished testifying, the prosecutor advised the court the parole officer involved in the August 30, 2012 search was "ready and available to come over [to] testify." The court responded: "If you need. If needed." Neither side called the parole officer as a witness.

Defendant testified about the events of August 30, 2012. According to defendant, he had been on parole for about two years and was wearing an ankle monitor. He testified that under the terms of his parole, he could not be outside

10

later than 7:00 p.m.[3]  He admitted that on August 30, 2012, he was outside between 8:00 p.m. and 9:00 p.m.  He testified:

> I was on the front step.  As you open the door, I cannot go outside because my ankle monitor will go off.  So, I opened the front door so I [didn't] smoke while my child was in the house.  As I opened the front door I'm sitting on my front step, the top of the steps, smoking a cigarette.  I'm done [with] the cigarette.  I put the cigarette out, I shut the door, put the top lock on, walk to the kitchen, wash my hands.

He then heard a knock on the door, which he opened after a parole officer identified herself.  Officers entered the house, restrained him, and searched the house after seeing the stack of money when they entered the kitchen.  He denied he had run into the house and asserted the money, which was later determined to be $2,747 in cash, came from his job at Dream Cuisine.  Defendant testified he had provided his version of those events to plea counsel.

Defendant initially denied reviewing discovery materials but then stated plea counsel's secretary had given the materials to him and told him to read

---

[3]  In contrast, in his certification in support of his amended petition, defendant testified that pursuant to the "specific and strict conditions for [his] parole," he "had to be in [his] home all day unless [he] was at work."

them.[4]  Defendant confirmed he and plea counsel had discussed a possible suppression motion "several times."  According to defendant, plea counsel told him about the information in the investigative report, which was part of the discovery materials, was "a bunch of BS" and that "he could file a motion and get this thrown away."  Defendant understood the prosecutor initially had offered to recommend a sentence of a twelve-year imprisonment term with a six-year parole-ineligibility period on just the charges in the CDS indictment. Defendant testified he had asked plea counsel, "because I'm getting fourteen years, twelve years, why we can't file the motion?" and plea counsel told him they could file the motion.

Defendant testified about the plea hearing.  He was represented by plea counsel on the charges in the CDS indictment and another attorney on the charges in the aggravated-assault indictment.  According to defendant, while he was reviewing the plea form with plea counsel, they discussed the suppression motion and plea counsel told him "at this time [he] was signing the plea form to take the deal, and it was too late to file the motion."

---

[4]  In contrast to his testimony at the PCR hearing, in his certification in support of his amended petition, defendant testified plea counsel, not his secretary, had "handed [him] a lot of paperwork and told [him] it was [his] discovery and that [he] should review it."  Defendant certified he "looked through the paperwork for a long time that day."

12

On cross-examination, defendant conceded his certification in support of his petition did not contain any reference to the discussions he testified he had had with plea counsel about the suppression motion.

After hearing the testimony of defendant and his plea counsel, the PCR court placed its decision on the record, denying defendant's petition. The court found plea counsel to be "very credible" given his demeanor and experience. The court found defendant was "less credible" than plea counsel because his testimony was inconsistent. The court cited defendant's testimony that "he didn't go outside with his ankle monitor because he knew it would trigger the device"; yet "he testified he sat outside on the top step to smoke a cigarette." The court noted defendant also "first testified that he didn't have an opportunity to review the discovery, but then he did testify that he was given all the discovery and reviewed it, although he stated he didn't know what he was reviewing." The court also reviewed the transcript of the plea hearing and considered defendant's testimony that he had consulted with both lawyers regarding the plea form and was satisfied with their services.

The court found plea counsel and defendant had met "numerous times" and "discussed the exposure [defendant] had in the drug case given his prior record, specifically that he was facing a sentence of life in prison." The court

13

also found they had "discuss[ed] the possibility of filing a suppression motion, and . . . the likelihood of success of that motion." The court concluded plea counsel "believed his client ran into the house as detailed in the report of the incident, which would have been consistent since [defendant] knew that being outside may set off an alert on his GPS bracelet." The court believed plea counsel "was aware of the lower expectation of privacy that parolees enjoy," "the lower standard of searches of a parolee's residence," and "that plea offers would be taken off the table or become less favorable to the defendant if a motion to suppress was filed, given his substantial experience as a criminal defense lawyer with over forty years of experience." The court found plea counsel believed the suppression motion "would have been unsuccessful and would have ultimately exposed [defendant] to a less favorable plea offer, or no plea offer at all," thereby exposing defendant "possibly to a life sentence rather than the less[er] sentence he received."

Based on those factual findings, the court held defendant "had the benefit of the advice and guidance of a reputable, competent attorney with over forty years of experience in criminal defense work." The court found plea counsel had "exercised reasonable professional judgment and sound strategy in not filing the suppression motion, and not exposing his client to a less favorable plea

14

offer." The court concluded plea counsel "did not make any errors that were so serious that he was not functioning as counsel, and instead acted for sound strategic reasons." Because it found defendant had "not met the first prong of the Strickland standard," the court did not consider the merits of the suppression motion. The court entered an order denying defendant's petition on January 20, 2023. This appeal followed.

Defendant presents the following arguments for our consideration.

> POINT ONE
>
> THE PCR JUDGE ERRED WHERE HE CONCLUDED THAT THE TRIAL ATTORNEY'S DECISION NOT TO FILE A SUPPRESSION MOTION WAS REASONABLE.
>
> POINT TWO
>
> DEFENDANT WAS PREJUDICED BY HIS TRIAL ATTORNEY'S FAILURE TO FILE A MERITORIOUS MOTION TO SUPPRESS.

## II.

We review a PCR court's conclusions of law de novo. Nash, 212 N.J. at 540-41. Where, as here, the court has conducted an evidentiary hearing on a PCR petition, we defer to the "court's factual findings based on its review of live witness testimony," id. at 540, because of its "opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot

15

enjoy," State v. Nuñez-Valdéz, 200 N.J. 129, 141 (2009) (quoting State v. Elders, 192 N.J. 224, 244 (2007)); see also Nash, 212 N.J. at 540 (finding "[a]n appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he [or she] has observed firsthand"). We must affirm the PCR court's factual findings unless they are not supported by "sufficient credible evidence in the record" and "'are so clearly mistaken that the interests of justice demand intervention and correction.'" Nuñez-Valdéz, 200 N.J. at 141 (quoting Elders, 192 N.J. at 244) (internal quotation marks omitted).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee defendants in a criminal proceeding the right to the assistance of counsel in their defense. The right to counsel requires "the right to the effective assistance of counsel." Nash, 212 N.J. at 541 (quoting Strickland, 466 U.S. at 686).

To establish a prima facie case of ineffective assistance of counsel, a defendant must show a "reasonable likelihood" of success under the two-prong test outlined in Strickland. State v. Preciose, 129 N.J. 451, 463 (1992); see also Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 58. The Strickland test requires that defendant show (1) "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and (2) counsel's "deficient performance prejudiced the defense." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012). If a defendant fails to sustain his burden under either prong of the standard, a defendant's ineffective-assistance-of-counsel claim fails. Strickland, 466 U.S. at 687.

Under the first prong, a defendant must show "counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Allegro, 193 N.J. 352, 366 (2008) (quoting State v. Castagna, 187 N.J. 293, 314 (2008)). Our analysis under the first prong is highly deferential to counsel. State v. Arthur, 184 N.J. 307, 318 (2005); see also Fisher, 156 N.J. at 500 (finding "[u]nder the first prong of the [Strickland] test, counsel's performance is to be reviewed with 'extreme deference . . . .'") (quoting Fritz, 105 N.J. at 52). When "applying the first [Strickland] prong, courts are required . . . 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

17

perspective at the time.'" Fisher, 156 N.J. at 500 (quoting Strickland, 466 U.S. at 689).

There is "'a strong presumption' that [counsel] provided reasonably effective assistance" and counsel's "decisions followed a sound strategic approach to the case[,]" State v. Pierre, 223 N.J. 560, 579 (2015) (quoting Strickland, 466 U.S. at 689), even when a strategic decision turns out to be a mistake, State v. Buonadonna, 122 N.J. 22, 42 (1991). A defendant may rebut the presumption of effectiveness by proving trial counsel's actions were not "sound trial strategy." Arthur, 184 N.J. at 319 (quoting Strickland, 466 U.S. at 689).

Under the second Strickland prong, a defendant must "affirmatively prove" "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694). Proof of prejudice under Strickland's second prong "is an exacting standard." Ibid. (quoting Allegro, 193 N.J. at 367).

In certain limited circumstances, "such as the '[a]ctual or constructive denial of the assistance of counsel altogether,' prejudice is presumed." State v.

Goodwin, 173 N.J. 583, 597 (2002) (alteration in original) (quoting Strickland, 466 U.S. at 692). "Failure to file a suppression motion, however, is not one of those circumstances." Ibid. (quoting Fisher, 156 N.J. at 501). "Additionally, when counsel fails to file a suppression motion, the defendant not only must satisfy both parts of the Strickland test but also must prove that his [or her] Fourth Amendment claim is meritorious." Ibid. (alteration in original) (quoting Fisher, 156 N.J. at 501); see also State v. Worlock, 117 N.J. 596, 625 (1990) ("The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel.").

Defendant focuses his appellate argument on the PCR court's purported failure in "not consider[ing] whether [plea counsel] informed defendant of the risks and rewards of pressing the particular application." Defendant concedes "the State's policy [of withdrawing a plea offer or making it less favorable to a defendant when a defendant moves to suppress evidence] existed in every criminal case where a plea offer was made." But he contends "it is whether defense counsel failed to review with the client the risks and rewards of filing a motion that is determinative of what is professionally competent assistance under the first prong of the Strickland/Fritz test."

The problem with that argument is that defendant did not make a failure-to-advise claim in either his petition or amended petition and did not make that argument to the PCR court initially or on remand. Accordingly, we decline to consider that argument on appeal. See Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 145 (App. Div. 2018) (applying "well-settled" principle that appellate court will not consider an issue that was not raised before the trial court); State v. Robinson, 200 N.J. 1, 19 (2009) (finding "[t]he jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves").

Instead, we focus on the issue defendant raised in his petition – whether plea counsel's performance was deficient due to his failure to move to suppress evidence seized from defendant's residence – and the clear directives we gave the PCR court – to conduct on remand "an evidentiary hearing to consider the reasons counsel did not file a suppression motion, and to determine whether 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" Medina, No. A-1390-19 (slip op. at 25) (quoting Strickland, 466 U.S. at 687) (internal quotation marks omitted).

In Fisher, the defendant claimed his trial counsel had rendered ineffective assistance because she had failed to refile a previously withdrawn suppression motion. 156 N.J. at 507. The reason why counsel had not refiled the motion was unclear. Ibid. The defendant blamed counsel's failure to refile on her mistaken understanding of the law. Ibid. The Court found, however, counsel's performance might not have been deficient if she had decided not to refile the motion due to "sound strategic reasons" and not a mistaken understanding of the law. Ibid. The Court recognized it was "possible that trial counsel did not refile the motion because she did not want to lose a favorable plea offer." Ibid. Because the "record [was] unclear whether counsel based her decision not to refile defendant's motion to suppress on strategic considerations or an erroneous interpretation of the law," the Court remanded the case "for a hearing to determine counsel's reason for not refiling defendant's motion to suppress." Ibid.

In State v. Johnson, 365 N.J. Super. 27, 35-36 (App. Div. 2003), the defendant claimed his trial counsel had rendered ineffective assistance because he had failed to file a suppression motion. The reason for defense counsel's failure to file the motion was not disputed. Id. at 36. "[D]efense counsel failed to file a timely suppression motion not due to strategic considerations," but

21

because he admittedly had concluded a suppression motion would be "frivolous and without merit . . . based on his mistaken belief that consent to enter allowed for a full[-]blown search." We concluded on that record the defendant had met both Strickland prongs and remanded the case for an evidentiary hearing on whether the seized evidence should have been suppressed. Id. at 37.

This case is like Fisher. Before our remand, the reason why trial counsel had not moved to suppress the seized evidence was not clear. Accordingly, we remanded the case so the PCR court could hear testimony on that issue in an evidentiary hearing and make that determination. Having heard the testimony of defendant and plea counsel, the PCR court found plea counsel to be "very credible" and defendant "less credible" because his testimony was inconsistent. We perceive "no basis to second-guess the credibility findings of the PCR court." Gideon, 244 N.J. at 562 (quoting Nash, 212 N.J. at 545).

During the hearing on remand, plea counsel testified about his concerns regarding defendant's exposure to a life sentence, the reduced standard on a suppression motion involving a parolee, the merits of the motion given the observations the parole officer had described in her report, and the prosecutor's practice of withdrawing or making less favorable a plea offer on a defendant's filing of a suppression motion. The court found that testimony credible and

22

concluded plea counsel believed the suppression motion "would have been unsuccessful and would have ultimately exposed [defendant] to a less favorable plea offer, or no plea offer at all," thereby exposing defendant "possibly to a life sentence rather than the less[er] sentence he received." Thus, plea counsel credibly articulated "sound strategic reasons" for his decision not to file the suppression motion: he "did not want to lose a favorable plea offer" and risk his client's exposure to a life sentence. Fisher, 156 N.J. at 507.

Defendant had the opportunity – and the burden – at the remand hearing to rebut the "strong presumption" plea counsel's decision not to file the suppression motion fell "within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." Arthur, 184 N.J. at 319 (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted). He failed to meet that burden and, consequently, failed to satisfy the first prong of the Strickland standard.

When determining whether "counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case," Allegro, 193 N.J. at 366 (quoting Castagna, 187 N.J. at 314), a court must "evaluate the conduct from counsel's perspective at the time," Fisher, 156 N.J. at 500 (quoting Strickland, 466 U.S. at 689). The

testimony at the remand hearing established plea counsel's knowledge of the following circumstances: defendant was on parole on August 30, 2012; one of the conditions of defendant's parole was that he not be outside later than 7:00 p.m.; contrary to that condition, defendant admitted he was outside on the front step between 8:00 p.m. and 9:00 p.m. on August 30, 2012; defendant admitted law-enforcement officers saw a stack of money when they entered the kitchen; because he was on parole, defendant had a lower expectation of privacy than someone not on parole; because he had a lower expectation of privacy, it would be more difficult for defendant to succeed on a suppression motion; based on the factual assertions contained in her report, plea counsel knew the likely testimony of the parole officer; from his experience plea counsel knew the filing of the motion could result in the prosecution withdrawing the plea offer or making it less favorable, a policy defendant on appeal concedes exists; and absent the plea offer, defendant faced a life sentence.

Evaluating those circumstances "from counsel's perspective at the time," ibid., the PCR court on remand found plea counsel had "exercised reasonable professional judgment and sound strategy in not filing the suppression motion, and not exposing his client to a less favorable plea offer" and had "not ma[d]e any errors that were so serious that he was not functioning as counsel . . . ."

Accordingly, the court held defendant had not met the first <u>Strickland</u> prong and denied his petition.

Based on the record presented, including the testimony given at the remand hearing, we discern no error in the court's determination that defendant failed to sustain his burden under the <u>Strickland</u> standard to establish his ineffective-assistance-of-counsel claim. We therefore affirm the January 20, 2023 order denying defendant's PCR petition.

We have considered all of defendant's arguments on appeal and, to the extent we have not expressly addressed any of them, we have determined they are without sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25

A-2703-22